Missouri P. R. Co. v. Baxter.

MISSOURI PACIFIC RAILWAY COMPANY V. MARGARET E. BAXTER, ADMINISTRATRIX.

FILED NOVEMBER 20, 1894.   No. 5484.

1. **Master and Servant.** A servant by his contract of employment assumes the ordinary risks and dangers incident thereto.

2. ———: DEFECTIVE MACHINERY AND TOOLS: CONTINUED USE BY SERVANT. If the machinery, tools, or appliances furnished the servant by his master are obviously defective and dangerous, and the servant, notwithstanding, continues in the service, he thereby assumes the risks of any injury which he may sustain by reason of such defective appliances, unless he is induced to continue in such service by the promise of the master to remedy such defect.

3. ———: DUTY OF MASTER TO FURNISH APPLIANCES. The law does not require that an employer should furnish his servants the newest or the safest tools, machinery, or appliances for the performance of the work for which they are hired. If the master furnishes such machinery, appliances, or tools to the servant as are reasonably safe and fit for the performance of the work in hand, and which the servant, in the execution of his work, by the exercise of ordinary care on his part, may use with reasonable safety to himself, the master has discharged his duty in that respect.

4. ———: NEGLIGENCE: ACTION FOR DAMAGES: PLEADING. A railroad brakeman, a part of whose duty it was to couple cars upon tracks known by him to be unblocked and dangerous, while so engaged caught his foot in an unblocked guard rail and was killed. His administratrix sued the railway company for damages, alleging that its failure to block the guard rails was negligence which caused her intestate's death. The petition did not allege that the deceased was inexperienced when he entered the employ of the railway company; that he was ignorant at the time he entered the service of the company; that the guard rails and rails of its main track were unblocked; that he did not know that the guard rail was unblocked, at which he was killed; that he remained in the service of the company, relying upon a promise made by it to block its guard rails; nor that guard rails blocked were less dangerous than unblocked. *Held*, That the petition did not contain averments of fact which negatived the

presumption of law that the injury received by the deceased was one of the risks which he assumed by virtue of his employment, and, therefore, did not state a cause of action.

ERROR from the district court of Saline county. Tried below before HASTINGS, J.

The facts are stated by the commissioner.

*W. H. Morris, James W. Orr, D. Martin,* and *B. P. Waggener,* for plaintiff in error:

The petition does not state facts sufficient to constitute a cause of action when it merely alleges that the negligence consists in the failure at the time of construction to block the guard rails and switches. (*Missouri P. R. Co. v. Lewis,* 24 Neb., 848.)

By the pleadings, the admissions of the parties, and the evidence in the case it was clearly shown that the plaintiff's intestate continued in the service of the defendant company without protest or promise of a change or amendment, with the knowledge, or means of knowledge, that the guard rails of defendant company were unblocked; and he thereby waived the manner of construction, and thereby assumed the risks and dangers resulting from the operation of such tracks and guard rails, as one of the risks incident to his employment, and could not recover for any injuries resulting therefrom. (*Rush v. Missouri P. R. Co.,* 36 Kan., 129; *Smith v. St. Louis, K. C. & N. R. Co.,* 69 Mo., 32; *McGlynn v. Brodie,* 31 Cal., 376; *Richmond & D. R. Co. v. Risdon,* 12 S. E. Rep. [Va.], 786; *St. Louis, I. M. & S. R. Co. v. Davis,* 15 S. W. Rep. [Ark.], 895; *Sweeney v. Berlin & Jones Envelope Co.,* 101 N. Y., 520; *St. Louis, A. & T. R. Co. v. Lemon,* 18 S. W. Rep. [Tex.], 331; *Chicago, R. I. & P. R. Co. v. Lonergan,* 118 Ill., 41; *Wood v. Locke,* 147 Mass., 604; *Mayes v. Chicago, R. I. & P. R. Co.,* 63 Ia., 562; *Appel v. Buffalo, N. Y. & P. R. Co.,* 111 N. Y., 550; *Lovejoy v. Boston & L. R. Co.,* 125 Mass., 79;

*Ladd v. New Bedford R. Co.*, 119 Mass.; 412; *Tuttle v. Detroit, G. H. & M. R. Co.*, 122 U. S., 189; *Gibson v. Erie R. Co.*, 63 N. Y., 449; *Lake Shore & M. S. R. Co. v. McCormick*, 74 Ind., 440.)

Where a person of mature age and experience is engaged in a particular line of employment, and has the opportunity to know and see the manner of construction of a particular appliance, or of a part of a railroad, and continues in the employment of the company with such opportunities, the law presumes that he exercised ordinary care, and that he knew the manner of its construction and at least the obvious dangers attending the discharge of his employment, and that he continued in the discharge of such duties with such knowledge. (*Parigo v. Chicago, R. I. & P. R. Co.*, 52 Ia., 276; *St. Louis, A. & T. R. Co. v. Lemon*, 18 S. W. Rep. [Tex.], 332; *Hayden v. Smithville Mfg. Co.*, 29 Conn., 557; *Henderson v. Coons*, 31 Ill. App., 75; *Gleason v. New York & N. E. R. Co.*, 31 N. E. Rep. [Mass.], 79; *Way v. Illinois C. R. Co.*, 40 Ia., 341; *Wright v. New York C. R. Co.*, 25 N. Y., 566; *Muldowney v. Illinois C. R. Co.*, 39 Ia., 615; *Kitteringham v. Sioux City & P. R. Co.*, 62 Ia., 285; *Richmond & D. R. Co. v. Risdon*, 12 S. E. Rep. [Va.], 786; *Rush v. Missouri P. R. Co.*, 36 Kan., 129.)

A master is not bound to give notice of patent dangers discoverable by a reasonable and ordinary exercise of diligence on the part of the servant. (*Morse v. Minneapolis & St. Louis R. Co.*, 30 Minn., 466; *Fones v. Phillips*, 39 Ark., 17; *Atlas Engine Works v. Randall*, 100 Ind., 293; *Deane v. Caldwell*, 127 Mass., 243; *Chicago, R. I. & P. R. Co. v. Clark*, 15 Am. & Eng. R. Cas. [Ill.], 261; *Hughes v. Winona & St. Peter R. Co.*, 27 Minn., 137; *Walsh v. St. Paul & D. R. Co.*, 27 Minn., 367.)

If the defect is patent, open to observation, or such as the ordinary use of the machine in the business the servant is engaged would disclose to an ordinarily observant man, and the servant had ample opportunity by operating it be-

fore being injured to observe the defect, his opportunity to know would be held as knowledge whether in fact he knew of the defect, or not. (*Porter v. Hannibal & St. J. R. Co.*, 71 Mo., 66 ; *Muldowney v. Illinois C. R. Co.*, 39 Ia., 615 ; Wharton, Negligence, sec. 244; *Gibson v. Erie R. Co.*, 63 N. Y., 449; *Chicago, R. I. & P. R. Co. v. Lonergan*, 118 Ill., 41.)

Whatever danger there was by reason of the guard rail not being blocked, was patent and open to the observation of plaintiff's intestate. (*Mayes v. Chicago, R. I. & P. R. Co.*, 63 Ia., 562; *Williams v. Central R. Co.*, 43 Ia., 396; *De Forrest v. Jewett*, 88 N. Y., 264; *Walsh v. St. Paul & D. R. Co.*, 27 Minn., 367 ; *Michigan C. R. Co. v. Austin*, 40 Mich., 247 ; *Indianapolis, B. & W. R. Co. v. Flanigan*, 77 Ill., 365; *Hathaway v. Michigan C. R. Co.*, 51 Mich., 253 ; *McCoy v. First Nat. Bank, Mt. Pleasant*, 50 Ia., 580.)

The servant is bound to make reasonable use of his senses to avoid danger and injury in the course of his employment. (*Walsh v. St. Paul & D. R. Co.*, 27 Minn., 367 ; *Hughes v. Winona & St. Peter R. Co.*, 27 Minn., 137 ; *De Forrest v. Jewett*, 88 N. Y., 264; *Tuttle v. Detroit, G. H. & M. R. Co.*, 122 U. S., 189.)

When a person offers himself for employment in a particular capacity, he thereby contracts that he has the requisite skill and experience to properly discharge the duties of the position sought and accepted by him, and that he knows at least the obvious dangers of the employment in which he is about to engage. (*McGinnis v. Canada Southern Bridge Co.*, 49 Mich., 466 ; *Smith v. St. Louis, K. C. & N. R. Co.*, 69 Mo., 32; *Rush v. Missouri P. R. Co.*, 36 Kan., 129; *Lake Shore & M. S. R. Co. v. McCormick*, 74 Ind., 440.)

The master is not bound to furnish the safest appliances, nor adopt every new invention, although the new device or invention may be safer than the one in use. (*Chicago,*

*R. I. & P. R. Co. v. Lonergan,* 118 Ill., 41; *Camp Point Mfg. Co. v. Ballou,* 71 Ill., 418; *McGinnis v. Canada Southern Bridge Co.,* 49 Mich., 466; *Smith v. St. Louis & C. & N. R. Co.,* 69 Mo., 32; *Lake Shore & M. S. R. Co. v. McCormick,* 74 Ind., 447; *Rush v. Missouri P. R. Co.,* 36 Kan., 129; *Simmons v. Chicago & T. R. Co.,* 110 Ill., 340.)

*F. I. Foss* and *E. E. McGintie, contra.*

RAGAN, C.

Margaret E. Baxter, administratrix of the estate of George Edward Baxter, deceased, brought this suit in the district court of Saline county against the Missouri Pacific Railway Company (hereinafter called the "Railway Company") for damages, under chapter 21, Compiled Statutes, 1893, for the death of her intestate, her husband, alleged to have been caused by the negligence of the Railway Company. The administratrix had a verdict and judgment and the Railway Company brings the case here for review.

There are many errors assigned and argued in the brief of counsel for the plaintiff in error; but as we have reached the conclusion that the petition of the administratrix filed in the court below does not state facts sufficient to constitute a cause of action, and that the judgment of the district court must, therefore, be reversed, it becomes unnecessary to consider any question in the record except the sufficiency of such petition. The petition of the administratrix alleged the death of George Edward Baxter; her appointment as administratrix of his estate; that he was her husband, and at the time of his death left the administratrix, his widow, and two minor children him surviving. The petition further alleged:

"(4.) That the defendant had so negligently, carelessly, and unskillfully constructed its railroad track at Talmage,

both upon the main track, side tracks, and spur tracks, that any one who was an employe of said company, using due diligence, care, and skill in transacting the business of said company, was liable to be injured, hurt, and damaged on account of the negligent, careless, and unskillful manner in which the said track of the defendant was constructed at Talmage; that the said George Edward Baxter, while employed by the defendant at a reasonable salary as a compensation for his services, in the exercise of due care and skill upon his part in coupling the cars upon the side track of the defendant at Talmage, did, without any negligence upon his part, but on account of the negligence, carelessness, and unskillfulness of the defendant in the construction of its railroad bed, side tracks, and spur tracks, in not properly blocking and filling up the space between the outside rail and guard rail, have his left ankle caught just above the heel, between the guard rail and outside rail of said track, which threw him under the trucks of said cars, and he was thereby killed, which said killing was on account of the carelessness, negligence, and unskillfulness on the part of the defendant in the construction of their railroad, and while the said George Edward Baxter, the employe of the said Railway Company, was acting directly under the orders of the conductor of said train of which he was brakeman, and while he was using due care, diligence, and skill in the transaction of the business of said Railway Company."

The administratrix also alleged in her petition that her husband, at the time of his death, was thirty-three years old. At that time he was employed by the Railway Company as a brakeman on a train running between the stations of Crete and Talmage in Nebraska, "including the main line of road at Talmage, the side tracks, spurs, and other tracks necessary to be used and operated by said Railway Company at said place in connection with their business to and from Crete in Saline county, Nebraska."

A railroad brakeman, a part of whose duty it was to couple cars upon tracks known by him to be unblocked and dangerous, while so engaged caught his foot in a frog and was injured. Held, that he took upon himself the risk involved in the non-blocking of the frogs, and could not maintain an action against his employer for the injury sustained. (*Wood v. Locke*, 147 Mass., 604.)

In *Tuttle v. Detroit, G. H. & M. R. Co.*, 122 U. S., 189, it is said: "When a servant, in the execution of his master's business, receives an injury which befalls him from one of the risks incident to the business, he cannot hold the master responsible, but must bear the consequences himself."

A switchman employed in a railway company's yards, in helping to make up and distribute trains, while engaged in his employment "caught his foot in a frog" which connected two converging tracks and was used to effect the transfer of cars from one track to the other, and before he could release himself he was run over and killed. His administratrix sued the company for damages, alleging that it had been guilty of negligence in not "blocking its frogs." The switchman had been in the employ of the company for some years, and employed in and about the yard in which he was injured for quite a length of time prior thereto, and was acquainted with the frog and knew that it was not blocked. It was held that the switchman, in accepting and continuing in the employment, assumed the hazard of all known and obvious dangers, and that he was charged with notice of the difficulty of removing the foot when caught in the frog, and of the danger to be apprehended therefrom, and that, therefore, he could not recover. (*Appel v. Buffalo, N. Y. & P. R. Co.*, 111 N. Y., 550.)

In *Mayes v. Chicago, R. I. & P. R. Co.*, 63 Ia., 562, it was held: "Where defects in a railway are obvious to all employes, one who knows of such defects, or by the exercise of ordinary care might know of them, but, without

objection or promise of amendment, continues in the company's employment, thereby waives his right to recover for injuries received by reason of such defects."

In *Rush v. Missouri P. R. Co.*, 36 Kan., 129, the facts were: The railway company in the construction of its railway did not use any blocking or other protection between the main rails of its track and the guard rails. A servant of the railway company was employed as a switchman for about two and one-half months in one of the railway company's yards, and while in the discharge of his duty he stepped between the main rail and the guard rail of one of the tracks and was killed. His administratrix sued the railway company for damages. The court held "that the condition of the railway tracks and the danger must have been known to the employe, and, therefore, that he assumed the risk."

In *Sweeney v. Berlin & Jones Envelope Co.*, 101 N. Y., 520, it is said: "A servant accepts the service subject to the risks incident to it; and where, when he enters into the employment, the machinery and implements used in the master's business are of a certain kind or condition, and the servant knows it, he voluntarily takes the risk resulting from their use, and can make no claim upon the master to furnish other or different safeguards."

In *Chicago, R. I. & P. R. Co. v. Lonergan*, 118 Ill., 41, it was held: "A person who engages in the service of a railroad company in the running of its trains is presumed to do so with a knowledge of the dangers incident to such service, and he assumes the risks of its ordinary hazards. An employer is not bound to furnish for his workmen the safest machinery, nor to provide the best methods for its operation in order to save himself from responsibility for accidents resulting from its use. If the machinery be of an ordinary character, and such as can, with reasonable care, be used without danger to the employe, it is all that can be required from the employer."

Missouri P. R. Co. v. Baxter.

In *McGinnis v. Canada Southern Bridge Co.*, 49 Mich., 466, it was held : "An employer is not bound to make use of the newest mechanical appliances for the purpose of insuring the safety of his employes, especially if it does not appear that on the whole it would be advantageous to them. So, a railway company is not bound to block its frogs, particularly if it does not appear that in doing so it would not entail greater dangers than it would avert."

In *Smith v. St. Louis, K. C. & N. R. Co.*, 69 Mo., 32, it is said : " Railroad companies are bound to use appliances which are not defective in construction ; but as between them and their employes they are not bound to use such as are of the very best or most improved description.   *   * A brakeman who continues in the service of a railroad company with knowledge that the guard of a switch is made of T rail, cannot recover for injuries sustained in consequence of his foot being caught between the guard and the frog, notwithstanding it may appear that if the guard had been made of a different rail it would have been less dangerous."

In *Lake Shore & M. S. R. Co. v. McCormick*, 74 Ind., 440, it is held : "An employe, when he enters the service of an employer, impliedly agrees to assume all risks ordinarily and naturally incident to the particular service ; and the employer impliedly agrees that he will not subject the employe, through fraud, negligence, or malice, to greater risks than those which fairly and properly belong to the particular service in which the employe is to be engaged.   The employer's obligation is not to supply the employe with absolutely safe machinery, or with any particular kind of machinery, but to use ordinary and reasonable care not to subject the employe to extraordinary or unreasonable danger."

These authorities establish three general rules:

(1.) That a servant by his contract of service assumes the ordinary risks incident to such employment.

55

(2.) That if the machinery, tools, or appliances furnished him by the master are obviously defective and dangerous, and he nevertheless continues in the service of the master, he thereby assumes the risks of all injury which he may sustain by reason of such defective machinery or appliances, unless he continues in the service by reason of a promise of the master to remedy such defects.

(3.) That a master is not bound to adopt the newest or the safest machinery, tools, or appliances for the safety of his servants.

It will be observed that the only ground of negligence charged against the Railway Company in this case in the petition of the administratrix is the failure of the Railway Company to block the spaces between the guard rail and the rail of its main track. The petition does not allege, when Baxter entered the service of the Railway Company, that he was inexperienced when he entered its employ; how long he was in its service before he was killed; that he did not know at the time he entered the service of the Railway Company that the spaces between the guard rails and rails of its main track were unblocked; that he did not know the guard rail was unblocked at which he was injured; that the Railway Company promised him, in consideration of his remaining in its service, to block its guard rails; nor that guard rails blocked are less dangerous than unblocked. In other words, this petition does not contain averments of fact which negative the presumption that the injury received by Baxter was one of the risks which he assumed by virtue of his employment. We have no doubt but that the failure of the Railway Company to block its guard rails is an evidence of negligence on its part; and if this were a suit by a passenger of this Railway Company for injuries such passenger had sustained by reason of such default on the part of the Railway Company it might be liable. But this is not the case before us. If this were a suit by one not a passenger and not an employe of the company,

who had been injured by reason of the default of the Railway Company to block its guard rail, such failure of the Railway Company might be evidence of negligence on its part. But this is not the case before us. The question with which we have to deal is this: Assuming that the Railway Company was guilty of negligence in not blocking its guard rail, we must assume, because of the want of averments in the petition to the contrary, that Baxter actually knew at the time he entered the company's service, and while he was in its service, that the guard rails were unblocked; that he continued in the service of the Railway Company without any promise on its part to block these guard rails; that he was not inexperienced; that he was not unacquainted with the condition of the guard rail where he was injured; and that, therefore, he assumed, by continuing in the service of the railway company, the risk of being injured by reason of these guard rails being unblocked. An employer is not an insurer of the safety of his employes. In the very nature of things a railway company cannot guaranty that those who enter its service are to be engaged in undertakings which are safe. Common sense and observation teach all men that railroad operation is extremely hazardous. Danger lurks on every rail and tie, and death stands watch at every bridge and switch. One who enters the employment of a railway company as a brakeman knows this fact quite as well as his employer, and assumes this risk and hazard and danger when he enters upon the service. Nor does the law require that an employer should furnish his servants the newest or the safest tools, machinery, or appliances for the performance of the work for which they are hired. If the master furnishes such machinery, appliances, or tools to the servant as are reasonably safe and fit for the performance of the work in hand, and which the servant, in the execution of his work, by the exercise of ordinary care on his part, may use with reasonable safety to himself, the master has discharged his duty in that re-

spect.   Doubtless employes of a railway company engaged in the operation of the road are exposed to less danger if the train be run at a speed of ten miles an hour instead of fifty, if in the construction of the road oak ties be used instead of cedar or pine, if eighty-five pound steel rails be used instead of fifty-six, if the road be constructed entirely without curves, and if the bridges and culverts be constructed of solid masonry instead of wood, and it is possible for a railway company to so construct and operate its road; but its failure to so construct and operate its road and trains, while possibly evidence of negligence, such evidence alone is not sufficient to support a verdict against it for damages for an injury received by one of its employes. The judgment of the district court is

REVERSED.