CHRIS DEHNING, ADMINISTRATOR, V. DETROIT BRIDGE & IRON WORKS.

FILED DECEMBER 7, 1895.    No. 5904.

1. **Master and Servant**: RISKS OF EMPLOYMENT.   A person who contracts to perform labor or services for another is presumed to have so contracted in view of the risks ordinarily incident to or connected with the employment.   He assumes all such risks.

2. ———: ———.   An employe assumes the risks arising from defective appliances used or to be used by him, or from the manner in which a business in which he is to take part is conducted, when such risks are known to him, or apparent and obvious to persons of his experience and understanding, if he voluntarily enters into the employment or continues in it without complaint or objection as to the hazards.

3. ———: ———: NEGLIGENCE.   The above rule has been modified in this state as follows: " Where the servant, in obedience to the requirements of his master, incurs the risk of machinery or appliances which, although dangerous, are not of such character that they may not be safely used by the exercise of reasonable

Dehning v. Detroit Bridge & Iron Works.

skill and caution, he does not, as a matter of law, assume the risk of injury from accident resulting from the master's negligence." (*Sioux City & P. R. Co. v. Finlayson,* 16 Neb., 578; *Lee v. Smart,* 45 Neb., 318.)

4. Trial: DIRECTING VERDICT. When the evidence is insufficient to sustain a verdict for plaintiff, it is proper practice for the trial court to direct a verdict for defendant.

ERROR from the district court of Douglas county. Tried below before IRVINE, J.

The opinion contains a statement of the case.

*Bradley & De Lamatre,* for plaintiff in error :

The employer, by law, owes a duty toward the employe independent of any action on the part of the employe, and that is, to furnish suitable and safe machinery and appliances for the performance of the labor required of the employe, and the more dangerous or hazardous the employment the greater the care and duty. (*Toledo, W. & W. R. Co. v. Fredericks,* 71 Ill., 294; *Camp Point Mfg. Co. v. Ballou,* 71 Ill., 417; *Richardson v. Cooper,* 88 Ill., 270.)

Where the servant is injured by reason of defective appliances placed in his hands by the master or his agent, the master is liable for damages, unless he can clearly show that he has used due care in the selection or manufacture of the same. (*Weems v. Mathieson,* 4 McQ. [Scot.], 215; *Feltham v. England,* L. R., 2 Q. B. [Eng.], 33; *Warner v. Erie R. Co.,* 39 N. Y., 468; *Chicago & N. W. R. Co v. Sweet,* 45 Ill., 202; *Northcoate v. Bachelder,* 111 Mass., 322; *Noyes v. Smith,* 28 Vt., 59; *Robinson v. Blake Mfg. Co.,* 143 Mass., 528; *Garneau v. Palmer,* 28 Neb., 310.)

The following cases were also referred to in the argument of counsel for plaintiff in error: *Crutchfield v. Richmond & D. R. Co.,* 78 N. Car., 300; *Rummell v. Dilworth,* 111 Pa. St., 343; *Lent v. Burlington & M. R. R. Co.,* 11 Neb., 204; *Holmes v. Boydston,* 1 Neb., 358; *Johnson v.*

*Missouri P. R. Co.*, 18 Neb., 696; *Smith v. Sioux City & P. R. Co.*, 15 Neb., 583.

*Breckenridge & Breckenridge,* and *L. F. Crofoot, contra:*

Plaintiff's decedent assumed the ordinary risks of employment. (*Sjogren v. Hall,* 18 N. W. Rep. [Mich.], 812; *Richards v. Rough,* 53 Mich., 212; *Norfolk & W. R. Co. v. Jackson,* 85 Va., 489; *Baker v. Western & A. R. Co.,* 68 Ga., 699; *Hough v. Texas & P. R. Co.,* 100 U. S., 213; *Marsh v. Chickering,* 101 N. Y., 396.)

The fact that an accident has happened raises no presumption of negligence against the person sought to be charged. (*Philadelphia & R. R. Co. v. Hummell,* 44 Pa. St., 375; *Nitro-Glycerine Case,* 15 Wall. [U. S.], 524; *Curran v. Warren Chemical Co.,* 36 N. Y., 153; *Frech v. Philadelphia, W. & B. R. Co.,* 39 Md., 576; *Bond v. Smith,* 113 N. Y., 378; *Huff v. Austin,* 46 O. St., 386; *Bahr v. Lombard,* 21 Atl. Rep. [N. J.], 190; *East Tennessee R. Co. v. Maloy,* 77 Ga., 237; *Michael v. Stanley,* 23 Atl. Rep. [Md.], 1094.)

Under the undisputed facts defendant is not liable. (*Titus v. Bradford, B. & K. R. Co.,* 20 Atl. Rep. [Pa.], 517; *Knight v. Cooper,* 14 S. E. Rep. [W. Va.], 999; *Anthony v. Leeret,* 105 N. Y., 591; *Moulton v. Gage,* 138 Mass., 390; *Sweet v. Ohio Coal Co.,* 47 N. W. Rep. [Wis.], 182; *Gibson v. Erie R. Co.,* 63 N. Y., 449; *Naylor v. Chicago & N. W. R. Co.,* 53 Wis., 661.)

The court properly directed a verdict for defendant. (*Hiatt v. Brooks,* 17 Neb., 38; *Osborne v. Kline,* 18 Neb., 344; *Lea v. McLennan,* 7 Neb., 143; *Grant v. Cropsey,* 8 Neb., 205; *Reynolds v. Burlington & M. R. R. Co.,* 11 Neb., 186; *Hammond v. Jewett,* 22 Neb., 363; *Hall v. First Nat. Bank of Fairfield,* 30 Neb., 99; *Burns v. City of Fairmont,* 28 Neb., 866; *Berger v. St. Paul, M. & M. R. Co.,* 39 Minn., 78.)

HARRISON, J.

This action was instituted by the plaintiff as adminis-
trator of the estate of Adam C. Dehning, deceased, to re-
cover damages alleged to have been sustained through the
death of the son of plaintiff, who lost his life while in
the employ of the defendant, and, it is further claimed,
through the negligence of defendant. It was stated, in
substance, in the petition that the defendant was, on or
about September 15, 1890, engaged in the construction of
a viaduct extending several blocks on and above Tenth
street, in the city of Omaha; that Adam C. Dehning was,
on or about the date mentioned, employed by defendant to
heat rivets used in fastening together certain parts of the
viaduct; that such heating was done in a small forge, which
was placed upon planks laid on the framework of the
upper portion of the viaduct, at a distance of about thirty
feet from the ground or the surface of the street beneath;
that coal was used as fuel for the forge and was kept on
the ground beneath the structure; that a part of the labor
to be performed by Adam C. Dehning was to procure this
coal from where it was placed on the street, for use in the
forge, whenever needed. The allegations in respect to the
negligence of defendant were of the placing of the forge
upon the viaduct in such a manner that it subjected the em-
ploye to risks of bodily injury, or endangered life, and fail-
ure to provide safe and proper appliances for use in operating
the forge, or suitable safeguards, or safe and secure ap-
proaches, walks, or planks for use in passing over the frame-
work of the viaduct in going to or from the platform upon
which the forge worked by the young man Dehning was
situated. It was further pleaded that by reason of the
negligence of defendant, and without any fault or negli-
gence on the part of Adam C. Dehning, on the 15th day
of October, 1890, he fell from the viaduct to the ground
below and was killed. There was an answer in which,

so far as we need to notice it, there was a denial of any negligence attributable to defendant, and a statement that: "Whatever dangers or risks of injury there were in and about the premises upon which the said Adam C. Dehning, deceased, was employed, the same were open, apparent, plainly visible, and necessarily forced upon the attention of the said deceased. This defendant alleges the fact to be that the said injuries resulting in the death of deceased were received by him by reason of his exposure to the risks incidental to the business, and also by reason of and owing to his own carelessness and negligence in not paying proper care and attention to his surroundings at the time he received the injuries which occasioned his death." When the case was placed upon trial before the court and a jury, the counsel for defendant interposed an objection to the reception of any testimony on behalf of plaintiff, for the reason that the petition did not state facts sufficient to constitute a cause of action. This objection was sustained and the plaintiff was allowed to amend his petition, which he did, stating, in addition to what was pleaded in the original petition : "And plaintiff further alleges that at the time when the deceased entered into the employment of defendant as above alleged he was required to work at a far less dangerous height and in a much less dangerous situation, but that after being so in the employ of defendant for some weeks prior to the receipt of the injury complained of, the place or position in which the deceased was required to perform his labor became much higher from the ground and far more dangerous, and by reason of the premises it became and was the duty of the defendant to provide other, different, safe, and suitable safeguards, platforms, passageways, and appliances to enable the deceased to prosecute his required work with safety, and that although the full extent of the dangers to which deceased would be subjected by such negligence of duty on the part of the defendant was not fully known to deceased,

yet that deceased did apprehend some increased dangers by
reason thereof and requested of the person in charge of the
works for defendant that some other, different, and safer plat-
forms, passageways, or appliances should be furnished him
in the prosecution of his required labors, and he was assured
that such additional safeguards, passageways, ropes, and
other appliances would be furnished as the work should
progress; and relying therein the deceased continued in
such said employ until and up to the receipt of the fatal
injury by him in such said employ as hereinbefore stated,
yet the defendant wholly disregarded its duty in that be-
half." The answer to the first petition was allowed to re-
main on file as an answer to the amended petition, and was
so treated. There was a trial of the issues, and at the close
of the introduction of the testimony counsel for defendant
moved the court, for certain stated reasons, to instruct the
jury to return a verdict for defendant. This motion was
sustained and the jury were instructed accordingly, and re-
turned a verdict for defendant, in conformity to which,
after motion for new trial heard and overruled, judgment
was entered.

The counsel for plaintiff state in their brief that they
present but two points for the consideration of this court:
"First—Can the plaintiff recover without first having
proven that deceased called the attention of defendant to
the lack of necessary safeguards, and got a promise from
defendant to supply them, but received the fatal injury be-
fore they were supplied? Second—Did the trial court com-
mit an error in taking the case from the jury because these
facts were not fully proven?" The correct solution of and
answer to the first depends to a large extent upon what
were the duties and rights which reciprocally devolved
upon and accrued to the respective parties to the contract
of employment, by reason of such contract, by entering into
it, or at all times during its continuance, and especially in
reference to any dangers necessarily or probably incident

40

or attached thereto.   There is no question which can suc-
cessfully be raised in regard to the correctness of the rule
of law which sets forth the duty of the employer to provide
suitable and safe appliances proper for the use of the em-
ploye in the performance of the labor to which he is as-
signed and to properly guard the employe from dangers;
but it is also true that when a party becomes the employe
of another to perform certain labor, he assumes all risks
ordinarily incident to the business.   It will be presumed
that he made the contract with reference to the risks ordi-
narily appertaining to the particular employment, and that
he had notice of all risks which were open and obvious, or
ought to have been, to a person of his experience and un-
derstanding, and if he continues in the employment, after
full knowledge of defects in or lack of appliances, or risks
to which he is exposed, which may be dangerous, and makes
no complaint, but voluntarily accepts the risks, if subse-
quently injured by reason thereof, there can be no recov-
ery. (Cooley, Torts, sec. 552, and cases cited ; Wood, Master
& Servant, secs. 326, 335; 2 Thompson, Negligence, note
15, p. 1008 ; McKinney, Fellow-Servants, sec. 30; *Moulton
v. Gage*, 138 Mass., 390 ; *Sweet v. Ohio Coal Co.*, 47 N.
W. Rep. [Wis.], 182; *Gibson v. Erie R. Co.*, 63 N. Y.,
449, s. c. 20 Am. Rep., 552; *Yates v. McCullough Iron Co.*,
16 Atl. Rep. [Md.], 280; *Casey v. Chicago, St. P., M. &
O. R. Co.*, 62 N. W. Rep. [Wis.], 624, and cases cited
therein; Bailey, Master's Liability for Injuries to Servant,
169, 170, 171; *Missouri P. R. Co. v. Baxter*, 42 Neb., 793.)

In the case at bar it appears that Adam C. Dehning, the
loss of whose life is the basis of the action, applied to the
superintendent or foreman of the work in progress on the
viaduct for employment, and during the course of the con-
versation at that time stated in regard to his fitness for and
knowledge of the work to be performed, "that he was a
rivet heater and used to work up high,   *.   *   *   was
used to the work.   He didn't say how long he had worked

at it, but he could do it." He secured employment and was
set to work heating rivets in a small or portable forge,
which rested on a plank platform twelve feet long and four
feet wide placed upon the top of and supported by the
framework of the structure being built; that on September
15, 1890, when he commenced work, the position of the
forge on the viaduct was such that it was at an elevation
of some ten or twelve feet from the ground or street.    He
continued at the same work during the succeeding days up
to and including a portion of October 13, 1890.    As the
work upon the viaduct progressed, the forge used by young
Dehning and its platform were moved along to different
positions on the top of the structure so that it was at all
times convenient to the men who were connecting the parts
of the viaduct and to whom, after heating the rivets, it
was the duty of the rivet heater to carry and deliver them.
On October 13, 1890, the forge used by the young man
Dehning was at a place on the bridge which made its height
from the ground some twenty-seven feet, and he, needing
coal, went below to procure it, and while returning and
walking to the forge, a distance of about thirty feet, on a
stringer or part of the framework, from a point at which he
reached the top of the structure by a ladder from the ground,
and when he had almost reached the platform and was ap-
parently in the act of placing the nail keg, which contained
the coal, on the platform, he fell to the ground and was
killed.    There was also evidence which tended to disclose
that there were some others engaged in the same duties as
the young man Dehning at another or other forges than the
one used by him, and that when they desired coal they
went to the ground, and after filling a vessel similar to the
one used by him, tied or looped a rope around it and drew
it up to the platform on the bridge; that rope was fur-
nished for any necessary purpose; that there was lumber
from which walks on and over the open framework of the
bridge could have been laid if they were desired, and also

that the ladder by which the ascent from the ground to the top of the framework of the structure was made could have been moved from the position it occupied on October 13, 1890, to one where any person going up it, on reaching the top would have been very near, or almost upon the platform of the forge used by Dehning. But however the facts may have been in respect to all these matters, it is clear that the risks of the employment, including the carrying of coal, the appliances to be used, the manner in which it was done and to be done, were apparent and obvious, and that during the time that Dehning had worked (almost a full month) he must have acquired full knowledge, must have been aware of them, and there was an entire failure to show that he made any complaint or asked for any changes to be made, and it must be inferred that he voluntarily accepted and assumed them. A full and careful review of all the testimony satisfies us that it was wholly insufficient to authorize or sustain a verdict for plaintiff, and this being true, the action of the court in directing a verdict for defendant was proper and correct.

We deem it best here to notice some decisions of this court in which a modification of the rule herein declared and applied to the existing facts, was announced and adopted. One of the cases alluded to is that of *Sioux City & P. R. Co. v. Finlayson*, 16 Neb., 578. It was there said: "The facts in this case may be briefly stated to be that the defendant in error had, for about two years, been in the employ of the plaintiff in error as a locomotive engineer on its railroad; that he had had charge of this particular engine for a considerable part of this time. Toward the latter part of this employment he noticed what he conceived to be evidences of weakness in that part of the locomotive known as the throat sheet. He called the attention of the proper officers and agents of the plaintiff in error to this fact, and upon examination it was thought there was no immediate danger, and he was instructed to continue with the

engine until such time in the near future as they could ef-
fect an exchange and cause the necessary repairs to be made.
Afterward, seeing, as he thought, increasing signs of weak-
ness in that part of the boiler, he again, and on several oc-
casions, called attention to the facts, when he was informed
that another engine would be furnished him in a given time
and requested to continue with the one in question until
that time, which he did, and for two days longer, when the
accident occurred.    During this time he was careful to keep
the steam at a comparatively low pressure, and supposed
that with this precaution there was no immediate danger.
It is not claimed, and cannot be, that the explosion was
caused or brought about by any negligent act of his.    Un-
der these circumstances it seems to us that the true rule
might be stated to be, that if the defective machinery,
though dangerous, is not of such a character that it may
not be reasonably used by the exercise of care, skill, and
diligence, the servant does not assume the risk.    If the
servant, in obedience to the requirement of the master,
makes use of machinery which, though dangerous, is not so
much so as to threaten immediate injury, or where it is
reasonably probable it may be safely used by extraordinary
caution or skill, the master would be liable for a resulting
accident.    At least such a rule is as favorable to the plaint-
iff in error as could, in our opinion, be reasonably required
by it, and especially would this be true when it is shown
that the master was fully informed of the apparent danger
and the machinery used upon his request and judgment.
(*Snow v. Housatonic R. Co.*, 8 Allen [Mass.], 441; *Colo-
rado C. R. Co. v. Ogden*, 3 Colo., 499; *Patterson v. Pitts-
burg & C. R. Co.*, 76 Pa. St., 389; 2 Thompson, Negli-
gence, 967; *Keegan v. Western Railroad Corporation*, 8 N.
Y., 175.)"   We desire particularly to challenge attention
to the facts that the employe had informed the proper offi-
cers and agents of the employer of the defects in the ma-
chinery, and been instructed to continue its use until a time

in the near future, coupled with the promise of an exchange and to have the necessary repairs made.

Another case in which the modification of the general rule was recognized is *Lee v. Smart*, 45 Neb., 318. The party suitor in that case, it appears, was employed by a lumber merchant, in the city of Omaha, in the capacity of a teamster, his work being the hauling of lumber. The writer of the opinion, Post, J., after stating the modification of the rule as announced in *Sioux City & P. R. Co. v. Finlayson*, says: "That the case at bar is within the exception there recognized, is apparent from a brief reference to the evidence in the record. The plaintiff, according to his own testimony, discovered the day after he entered the defendant's service, that there were no blocks in the brake-bars of the wagon assigned to him, and asked the defendant if it was necessary to fix them, to which the latter replied that other men had used the wagon without being fixed, and that he [the plaintiff] could, because the streets were level. The plaintiff appears to have had little knowledge regarding the weight of the load in question, but according to the testimony of Mr. Fry, who assisted in putting the lumber onto the wagon, it consisted of 2,945 feet of green poplar, weighing upwards of 8,500 pounds, or more than twice the weight of a reasonable load under the circumstances. Said witness testified further, that when the wagon was about three-fourths loaded, he called the defendant's attention to the fact that there was danger of overloading it, to which the latter replied that he wanted to put on a heavy load, as he was obliged to pay toll on crossing the bridge. The plaintiff, who, it is shown, had never crossed the river by means of the bridge mentioned, experienced no difficulty until he had started down the grade at the east end of the bridge, when, as claimed, without fault on his part, he lost control over the team in the manner and with the result above stated. The trial court, on this evidence, correctly declined to advise the jury that the plaintiff, as a

matter of law, assumed the risk of accident, although he knew, or might with reasonable diligence have known, that there was danger in thus using the wagon without a brake, heavily loaded as it was; and by proper instructions the question was submitted whether in attempting to cross said bridge the plaintiff exercised reasonable caution, or whether, in so doing, he was guilty of contributory negligence."

In the case of the *Sioux City & P. R. Co. v. Finlayson* the evidence clearly developed that there had been a complaint or objection to the proper person or persons of the unsafe and defective condition of the machinery, and a continuance of its use by requirement of the employer under promise that the subject of complaint should be removed or remedied; and in the case of *Lee v. Smart* it was shown that objection was made to the imperfect or defective condition of the brake to the wagon, and its further use was by direct requirement of the employer, and in both cases it further appeared that the machinery and appliances, although unsafe, were such as might be safely used by the exercise of reasonable skill and care on the part of the employe. The facts in these cases placed them clearly and unmistakably within a well-defined and recognized exception to the general rule, and they are not, in the doctrine announced in the decisions of them, in conflict with the rule applied in the present case, but plainly distinguishable from the case at bar, in which there were no facts shown which called for any modification of the general doctrine or made it within the exception thereto.

The opinion in the case of *Kearney Electric Co. v. Laughlin*, 45 Neb., 390, which was filed on the same day as the opinion in *Lee v. Smart, supra*, and was cited therein, and which cited, in support of the views therein expressed, the case of *Sioux City & P. R. Co. v. Finlayson, supra*, and also *Lee v. Smart*, turned mainly upon the proposition that the risks or hazards of the employment in which the plaintiff was engaged when injured were not obvious, open,

and apparent, and were of such a character that he did not have knowledge of them and could not be charged with knowledge, and the facts of the case were such as to entirely withdraw it from the operation of the general rule. There is no conflict between the rules stated in the opinion in that case and in the present case.    The judgment of the district court is

AFFIRMED.

IRVINE, C., took no part in the decision.