CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. WILLIAM M. MCGINNIS.

FILED NOVEMBER 18, 1896.   No. 6576.

1. **Master and Servant:** RISKS OF EMPLOYMENT. An employe assumes the ordinary risks of his employment.

2. ———: ———. An employe assumes the risks arising from the unsafe condition of premises where his labor, or a portion of it, is to be performed, when the risks and conditions are known to him, or are apparent and obvious to persons of his experience and understanding, if he voluntarily enters into the employment, or, after commencing, makes no complaint or objection in respect to the hazards.

3. **General Verdict:** SPECIAL FINDINGS: JUDGMENT. "When the special finding of facts is inconsistent with the general verdict the former controls the latter, and the court may give judgment accordingly." (*Johnston v. Milwaukee & Wyoming Investment Co.*, 49 Neb., 68; *Lynch v. Chicago, St. L. & P. R. Co.*, 36 N. E. Rep. [Ind.], 44.)

ERROR from the district court of Custer county. Tried below before HOLCOMB, J.

*A. W. Agee, J. W. Deweese, J. A. Kilroy,* and *J. S. Kirkpatrick,* for plaintiff in error.

*Sullivan & Gutterson, contra:*

The servant did not assume the risk of injury from apparent defects caused by the master's negligence. (Buswell, Law of Personal Injuries, secs. 192, 207; *Kane v. Northern C. R. Co.*, 128 U. S., 91; *Jones v. East Tennessee, V. & G. R. Co.*, 128 U. S., 443; *Lawless v. Connecticut R. R. Co.*, 136 Mass., 1; *Meloy v. Chicago & N. W. R. Co.*, 77 Ia., 743; *Thorpe v. Missouri P. R. Co.*, 89 Mo., 650; *Baltimore & O. & C. R. Co. v. Rowan*, 104 Ind., 88; *Louisville, N. A. & C. R. Co. v. Wright*, 115 Ind., 378; *Filbert v. Delaware & Hudson Canal Co.*, 56 N. Y. Super. Ct., 170; *Patterson v. Pittsburgh & C. R. Co.*, 76 Pa. St., 389; *Porter v. Hannibal & St. J. R. Co.*, 60 Mo., 160; *St. Louis, F. S. & W. R. Co. v.*

*Irwin,* 37 Kan., 701; *Rolseth v. Smith,* 38 Minn., 14; *Bonner v. La None,* 80 Tex., 117; *Sweet v. Michigan C. R. Co.,* 87 Mich., 559; *Kelleher v. Milwaukee & N. R. Co.,* 80 Wis., 584; *Boss v. Northern P. R. Co.,* 2 N. Dak., 128; *Nadau v. White River Lumber Co.,* 76 Wis., 120.)

HARRISON, J.

This action was instituted in the district court of Custer county by the plaintiff against the defendant company, to recover the amount of damages alleged to have resulted from injuries to plaintiff by the negligence of the company. There was a trial of the issues presented, to the court and a jury, and a verdict and judgment in favor of plaintiff. The company brings the case to this court by error proceedings. The plaintiff, on December 16, 1891, the date of the occurrence upon which this action is founded, was, and had been during some thirteen and one-half or fourteen months immediately prior thereto, continuously in the employ of the defendant railway company as a brakeman on freight trains running between Ravenna, as the eastern end of the run, and Seneca, as the western end. The trip between the two stations was made by trains on which the plaintiff was in the performance of his duties, during some days from Ravenna to Seneca and return, more frequently only the one way, either east or west in a day, and again less frequently with longer time intervening between the trips. Broken Bow is a station situated on the line of railway included in the trips made by trains on which plaintiff was employed. In the railroad yards at Broken Bow there was what is called a "spur,"—a track which was connected at its easterly end with the main track, or with a switch or sidetrack. The spur extended in a westerly direction to and beyond some coal sheds and lumber yards. At a short distance from the easterly end of the spur, and to the north of it, there stood a shed or "oil-house," placed there by parties, patrons of the road. This oil-house was distant from the nearest rail of the spur

about four feet and five inches, some witnesses stated; others gave the distance as three feet and eleven inches. The trains on which plaintiff worked passed through Broken Bow during the day,—the one from the west usually about noon,—and when the train reached Broken Bow, if there were cars to be shifted or switching to be done, the eastern-bound train and the men in charge must do it.   On the particular day in question the freight train from the west arrived in Broken Bow about 1 o'clock P. M., and as a part of the switching to be done, was a car loaded with coa', to be taken from a sidetrack on the south side of the main track and placed on the spur and beyond the oil-house.   This car was pulled up on the main line to a point east of either spur connection, and everything was prepared to "kick" it off on the spur, or to make what is also called a "running switch" of it to the place where it was to be left for unloading.   As a part of this work the car must be uncoupled or disconnected from the engine or car to which it was attached.   This the conductor attempted to do just as the car left the main line, and did not succeed.   The plaintiff, who was standing on the ground near the spur, took up the task and was successful.   He pulled the coupling pin and severed the connection of the coal-car with the train.   On the end of the coal-car on which the plaintiff did the work there was a narrow platform, on a level with the floor of the car and extending across it, except a space of some twelve or fourteen inches in the center, where was situated the draw-bar.   The plaintiff, by reason of the existence of this platform, was unable to uncouple the car while standing on the ground, but was obliged to get upon the platform and uncouple it from there.   After doing this the plaintiff swung himself around the corner of the car from which he had just uncoupled the car of coal, to and upon a ladder on the north side and end thereof, with the intention of going on top the car, and while standing on the ladder, the train being still moving in a westerly direction, he was carried against the south-

east corner of the oil-house and was thereby knocked from the ladder to the ground, and fell so that he was caught by some part of a car of the moving train and finally thrown or rolled into such a position that his arm and hand were across the rail and were run over by the wheel or wheels of the train and crushed. The negligence of the company was alleged to consist in permitting the oil-house to be placed where it stood relatively to the spur, and allowing it to be continued or to remain there.

One of the questions presented for consideration and determination is whether, under the state of facts developed by the evidence in respect to the conditions existing in the yard of the company where plaintiff was at work when injured, and his knowledge of such conditions, the plaintiff, under the rules of law applicable, was entitled to a recovery. A list of questions was submitted to the jury and they returned what is known as a special verdict, as follows:

"The jury are directed to answer in writing each of the following questions:

"First. Q. How long had the plaintiff been in the employ of the defendant as a brakeman on its freight train prior to the accident?

"A. About thirteen and one-half or fourteen months.

"Second. Q. Had the plaintiff passed the oil-house in question, while switching trains, prior to the time of the accident, and if so, how frequently?

"A. Yes."

The crew of which the plaintiff was a member switched on this spur-track about three times a week, and passed over a portion of this spur-track from two to six times a day that they switched thereon. There is no testimony definitely stated how frequently plaintiff passed said oil-house.

"Third. Q. Was the work which plaintiff had done as a switchman in the yard at Broken Bow, and over the track in question, prior to the accident, done in daylight or at night?

"A. Daylight.

"Fourth. Q. Did the plaintiff know, or could he have known by ordinary care and observation, of the existence and location of the oil-house prior to the accident, and if so, how long prior thereto?

"A. Plaintiff did know of the existence and location of the oil-house prior to the accident; and could have known of its existence and location from the early part of his service as brakeman.

"Fifth. Q. Did the plaintiff, after attempting to ascend the ladder, look to see if he was approaching the oil-house or any other structure located near the track?

"A. He did not.

"Sixth. Q. If you find that the plaintiff did not look to see if he was approaching the oil-house, then state why he did not look.

"A. The evidence does not definitely disclose the reason why he did not look, further than it appears that his attention was given to the uncoupling of the car and giving the signal that separation had been effected."

The plaintiff testified that he knew of the oil-house and its location, and that it was there when he commenced work for defendant as a brakeman. One of the witnesses for defendant testified that while working for the company as brakeman on the same train with the plaintiff, prior to plaintiff's injury, and on the spur or track where the injury occurred, witness sat down on the end of a car and let his feet hang over, and plaintiff called to him: "Look out for the shed," referring to the oil-house. The plaintiff denies that he had any such conversation with the witness. It is clear, from an examination of all the facts and circumstances adduced in evidence on the point of the knowledge of the plaintiff of the location of the oil-house, that the special findings of the jury in respect thereto embodied a correct conclusion. This being true, the special findings of facts were inconsistent with the general verdict, and when such a condition exists the former controls. (Code of Civil Procedure, sec. 294; *Ogg v. Shehan,*

17 Neb., 323; *Johnston v. Milwaukee & Wyoming Investment Co.*, 49 Neb., 68; *Lynch v. Chicago, St. L. & P. R. Co.*, 36 N. E. Rep. [Ind.], 44.) It is also clear that the nearness of the oil-house to the spur rendered it probably dangerous to any one performing the services and doing what plaintiff did at the place and the time of his injury. Under the operation of familiar and natural laws, injury would probably result. These facts were all open, obvious, and apparent to an ordinarily observant person. This being true, the plaintiff had knowledge of them, or must be charged with knowledge, and also with knowledge of the risk necessarily or probably incident to the existing conditions, and with its assumption. Hence he was not entitled to recover for the injury, notwithstanding the fact, which is undoubtedly true, that the situation of the oil-house, relatively to the spur, might have been made such that no injury would or could have resulted to plaintiff at the time in question. Of the duties to the employe which, by virtue of the contract of employment, devolve upon the employer is the one that the premises where the labor is to be performed shall be reasonably safe; but equally operative and governing the rights of the parties, it may be said that when a party becomes the employe of another to perform certain labor he assumes all risks ordinarily incident to the business. It will be presumed that he made the contract with reference to the risks ordinarily appertaining to the particular employment, and that he had notice of all risks which were open and obvious, or ought to have been to a person of his experience and understanding; and if he continues in the employment after full knowledge of defects in, or lack of, appliances, or risks to which he is exposed, which may be dangerous, and makes no complaint, but voluntarily accepts the risks, if subsequently injured by reason thereof there can be no recovery. (Cooley, Torts, p. 552*; Wood, Master & Servant, secs. 326, 335; 2 Thompson, Negligence, 1008, note 15; McKinney, Fellow-Servants, sec. 30; *Moulton v. Gage*, 138 Mass., 390; *Sweet v. Ohio*

*Coal Co.*, 47 N. W. Rep. [Wis.], 182; *Gibson v. Erie R. Co.*, 63 N. Y., 449; *Yates v. McCullough Iron Co.*, 16 Atl. Rep. [Md.], 280; *Casey v. Chicago, St. P., M. & O. R. Co.*, 62 N. W. Rep. [Wis.], 624; Bailey, Master's Liability for Injuries to Servant, pp. 169, 170, 171; *Missouri P. R. Co. v. Baxter*, 42 Neb., 793; *Dehning v. Detroit Bridge & Iron Works*, 46 Neb., 556; *Lynch v. Chicago, St. L. & P. R. Co.*, 36 N. E. Rep. [Ind.], 44; *Wilson v. Louisville & N. R. Co.*, 4 So. Rep. [Ala.], 701; *Perigo v. Chicago, R. I. & P. R. Co.*, 52 Ia., 276; *Gaffney v. New York & N. E. R. Co.*, 31 Am. & Eng. R. Cas. [R. I.], 265; *Fisk v. Fitchburg R. Co.*, 33 N. E. Rep. [Mass.], 510; *Kelly v. Baltimore & O. R. Co.*, 11 Atl. Rep. [Pa.], 659.) It follows from the views herein expressed that the judgment of the district court was wrong, and it must be reversed.

REVERSED AND REMANDED.