JOHN TOBLER, APPELLEE, v. UNION STOCK YARDS COMPANY, APPELLANT.

FILED NOVEMBER 19, 1909. No. 15,821.

1. **Appeal: EVIDENCE: HARMLESS ERROR.** The admission of immaterial evidence is not a ground for reversal unless it appears to have influenced the jury to the prejudice of the complaining party.

2. **Interest: MISTAKE OF CLERK: REMEDY.** In entering judgment on a verdict, the clerk should compute interest thereon from the date of its rendition, and not from the first day of the term. A mistake in computation of interest should be corrected by the district court on motion, and is not a ground for reversal of the judgment.

3. **Appeal: INSTRUCTIONS.** Stating the issues to the jury by copying the pleadings in the instructions is a practice not to be commended, but, where it appears that such a course has not resulted in prejudice to the rights of the complaining party, it is not a sufficient ground for reversal.

4. **Master and Servant: APPLIANCES: ASSUMPTION OF RISK: QUESTIONS FOR JURY.** An employee is entitled to assume that his employer has used due care to provide reasonably safe appliances for the doing of his work. Knowledge of the increased hazard resulting from the negligent location of a structure in dangerous proximity to a railroad track will not be imputed to an employee, using ordinary diligence to avoid it if properly located, because he was aware of its existence and general location; and, unless from the undisputed facts the court can declare, as a matter of law, that the employee actually had or was chargeable with such knowledge and thereby assumed the risk, those questions should be submitted to the jury.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*Greene, Breckenridge & Matters,* for appellant.

*Smyth, Smith & Schall, contra,*

BARNES, J.

Action in the district court for Douglas county against the Union Stock Yards Company, Limited, for damages on account of personal injuries sustained by John Tobler while working as a switchman on defendant's cars. Plaintiff recovered a judgment for $1,712, and the defendant has appealed.

It appears that at the time of the injury complained of defendant operated a railroad which connected its stock yards and the packing houses in South Omaha with the railroads centering there; that the plaintiff was employed by the defendant, and was a member of the crew engaged in switching cars from the stock yards to the packing houses; that he commenced work for defendant in September, 1906, and continued in its service until the 28th day of January, 1907, at which time he was injured; that until about a week before the accident he worked in what is known as the "North Yard," which is located about one-half a mile from the place where his injury occurred. It further appears that he was then transferred to the vicinity of the Cudahy packing plant, where he worked with what was known as the "Cudahy engine crew," which was engaged in switching cars to that plant. The record shows that there were several tracks leading from the yard into the icing sheds of the Cudahy company, one of which was called the "main icing track," or "track No. 1," and in close proximity thereto was another track designated as "track No. 2." These tracks run east and west, and on the north side of and close to track No. 2 the defendant had erected and maintained a watchman's shanty. At the time of the injury the switching crew, of which defendant was one, was engaged in placing a number of cars in the icing sheds. They kicked or shunted one car onto the main or lead track toward the shed above mentioned, on which the plaintiff, when it reached its proper position, set the brake. While he was performing that duty, the rest of the crew switched three cars onto track

No. 2, and plaintiff descended from the car on which he had set the brake, went rapidly to the cars which were coming in on track No. 2, met them at a point about 50 feet east of the watchman's shanty, caught hold of the ladder upon the side of the first car, and began to climb to the top of that car in order to set the brake thereon when it reached the icing shed. While he was rapidly ascending the ladder, but before he succeeded in reaching the top of the car, he struck the watchman's shanty, was knocked to the ground, and received the injuries complained of. With this summary statement of facts, we now proceed to the consideration of the assignments of error.

1. Defendant contends that the court erred in permitting plaintiff to testify that he was married, over its objections; and it is argued that the fact that he was a married man would naturally excite the sympathy of the jury and cause them to render an excessive verdict, while counsel for the plaintiff insist that the inquiry was a proper one. Without deciding this question, it is sufficient to say that we find nothing in the record which in any way indicates that the bare statement that the plaintiff was married had any prejudicial effect upon the rights of the defendant. That fact does not seem to have been again referred to in any part of the evidence, and the record contains nothing in relation to plaintiff's financial ability, or the condition of his family. If the evidence was improper, which we do not decide, it was not prejudicial, and therefore affords no ground for a reversal of the judgment. *Missouri P. R. Co. v. Fox,* 60 Neb. 531.

2. It is also urged that the judgment is excessive; that the clerk of the district court entered a judgment for the amount of the verdict, together with interest thereon, from the first day of the term, and thus violated section 6752, Ann. St. 1909, which provides as follows: "Interest on all decrees and judgments for the payment of money shall be from the date of the rendition thereof."

It seems that this contention is a meritorious one, but the error of the clerk affords no ground for a reversal of the judgment, because that matter could be, and doubtless will be, corrected, upon motion, by the district court. Considering the amount of the verdict, the only testimony as to the extent and result of the plaintiff's injury was his own and that of a physician called in his behalf. It appears beyond question that at the time he was injured he was working every day, Sundays included, and was earning $3.52 a day. That for four months thereafter he was unable to do any work, and was then unable to continue in the service of the company because of the weakened condition of his arm, which had been fractured by the accident. Because of this, he sought and obtained employment from the Swift Packing Company, where he earned, on an average, $10 a week. That at the time of the trial his hand and arm were still in such a weakened condition that he could not perform severe manual labor, and, according to the testimony of the physician, that condition was likely to remain for at least six months or a year longer. We are therefore unable to say that the amount of the verdict was excessive.

3. Defendant further contends that the district court erred in its statement of the case to the jury as found in the instruction given by that court upon his own motion. One point in support of this contention is that the trial court in stating the issues to the jury included in his instructions the allegations of the pleadings, and then stated: "In order to recover in this case, the plaintiff must show, first, that he was injured at the time and place substantially as alleged in his petition." The argument to sustain this contention is that there was no evidence introduced by the plaintiff to prove certain matters set forth in his petition. For instance, that no order was given by the defendant with respect to the placing of the cars that were being shunted upon the side tracks; that there was no testimony that the plaintiff was required, in the performance of his duties, to climb upon the car while

it was in motion; that there was no evidence that the work in which the plaintiff was engaged required him to ride freight cars by hanging on the side thereof when passing the watchman's shanty. We have carefully examined the plaintiff's petition, and fail to find therein any of the statements above set forth. We are therefore constrained to hold that this objection is not well taken. While we have in some instances condemned the practice of copying the pleadings in the instructions to the jury, and believe that such a method of giving instructions should not be used by our district courts, we have never reversed a judgment for that reason, and we are satisfied from a careful examination of all of the instructions that defendant was not prejudiced by the use of that method in the case at bar.

4. Defendant's principal contention, as stated by counsel, is "that the plaintiff assumed the identical risk of injury which he encountered in the course of his employment, and therefore cannot recover in this action." This point has been argued by counsel at great length, in able and exhaustive briefs, and orally upon the hearing before the court. As we view the record, this is the only question presented by this appeal which merits our serious consideration. It appears from a careful examination of the bill of exceptions that at the conclusion of the plaintiff's testimony counsel requested the court to direct the jury to return a verdict for the defendant. The request was refused, an exception was noted, and the defendant elected to stand upon the motion and declined to introduce any evidence in support of the defenses set forth by its answer. We find that the evidence fairly shows that the watchman's shanty, which was the cause of the plaintiff's injury, was situated on the north side of track No. 2, and so close thereto as to leave a space of a trifle less than 17 inches between its projecting eaves and the ladder on the side of an ordinary box car; that a man of ordinary size, while clinging to the ladder on the side of such a car,

could not pass the shanty without being struck thereby. No reason is shown for placing the shanty in the situation where it stood, while, on the contrary, the record contains at least some evidence which tends to show that it might have been erected at a safe distance from any of the defendant's switching tracks. It is quite apparent therefore that the defendant was negligent in erecting and maintaining the structure in the manner and at the place above described. It is contended, however, that the danger caused thereby was so obvious and so apparent that the plaintiff was charged, as a matter of law, with notice of it, and that by continuing in the defendant's service he assumed the risk, was guilty of contributory negligence, and therefore cannot recover. To support this contention defendant has directed our attention to *Chicago, B. & Q. R. Co. v. McGinnis,* 49 Neb. 649; *Anderson v. Union Stock Yards Co.,* 77 Neb. 196; *Obermeyer v. Logeman Chair Mfg. Co.,* 120 Mo. App. 59, 96 S. W. 673; *Narramore v. Cleveland, C., C. & St. L. R. Co.,* 96 Fed. 298; *Evans Laundry Co. v. Crawford,* 67 Neb. 153; and other like cases. We think those cases are clearly distinguishable from the one at bar. In the *McGinnis* case the plaintiff was injured by being struck by a structure called an "oilhouse," which was situated too close to the defendant's railroad track at Broken Bow, Nebraska. There the jury, in answer to certain questions submitted to them, found that the plaintiff had been employed as a brakeman on the defendant's freight train about 14 months; that he had passed the oil-house in question prior to the time of the accident from two to six times a day for three days in each week during the time he had been working for the company; that he knew of the existence and location of the oil-house prior to the accident, and could have known of its existence and location from the early part of his services as brakeman; that at the time of the accident he did not look to see if he was approaching the oil-house or any other structure located near the track. It also appeared from the evidence of one of the defendant's wit-

nesses that while the witness was working for the company as a brakeman on the same train with plaintiff prior to the accident, and on the spur track where the injury occurred, he stood down on the end of the car and let his foot hang over; that plaintiff called to him to "look out for the shed," referring to the oil-house in question. On those facts we held that the special findings were inconsistent with the general verdict for the plaintiff; that by observing the operation of familiar and natural laws plaintiff would have been aware of the injury which would probably result from his attempt to ride past the oil-house while clinging to the side of the car; and that, being aware of the danger, he voluntarily accepted the risk and could not recover for his injury.

In *Anderson v. Union Stock Yards Co., supra,* it appeared that the plaintiff had been in the service of the defendant company, and engaged in switching, coupling and uncoupling cars at the point where the accident happened, for several months; that the roadbed of the company at that point was, and had been during all of the time of plaintiff's service, illy constructed, badly out of repair, and obviously hazardous to the company's employees; that the tracks were winding and uneven, and continuously overflowed, or partly submerged by water from a nearby sewer; that there were holes and irregularities of the surface more or less filled with mud; that the cross-ties, or some of them, were above the surface at some places, and at others correspondingly depressed below the surface; that the defects were so great that, when the cars moved over the tracks, they swayed and rocked from side to side to a degree rendering it dangerous for the plaintiff to walk along the tops of them, as he was frequently obliged to do in the discharge of his duties. The plaintiff was injured by stepping between the cars, one of which was moving, for the purpose of making a coupling, and, while attempting to retreat from that position, lost his balance, swayed around, and was caught between the side of the car and a nearby platform, re-

ceiving the injuries for which he sought to recover. We held that the plaintiff, under those facts, and with the knowledge of them, by remaining in the service of the company, assumed the risk of his injury.

In *Obermeyer v. Logeman Chair Mfg. Co., supra,* the supreme court of Missouri held, in substance, that, where the master is negligent in furnishing a servant an unsafe place to work, the servant does not assume the risk of injury, caused by such negligence, although he knows, or by the exercise of ordinary care could know, that the place is unsafe; that, if the place provided for the servant to work is so obviously dangerous that a reasonably prudent man would not attempt to work in it, the servant by remaining there is guilty of such contributory negligence as to prevent a recovery in case he is injured. That case, however, was submitted to the jury on the question of assumption of risk, and a judgment for the plaintiff was affirmed.

*Narramore v. Cleveland, C., C. & St. L. R. Co., supra,* appears to be one which was governed by the Ohio statute, and therefore cannot be considered as authority in this case.

In *Evans Laundry Co. v. Crawford, supra,* a judgment for the plaintiff was reversed because the court failed to properly instruct the jury on the law of assumption of risk.

In the case at bar, however, it appears, without dispute, that the plaintiff had never been warned or notified by the defendant company that the watchman's shanty was dangerously close to the switching track, and that fact had never been called to his attention by any one. It further appears that he had never seen a car standing in close proximity to the shanty, and had never been afforded an opportunity to estimate or observe the distance between the shanty and a passing car; that he had never ridden or attempted to ride on the side of a car when passing the shanty during the short time he had been working at that point, but had at all times been on

the top of the cars, where he was required to be in order to set the brakes when they should reach their destination; that he had seen the shanty, it is true, and knew in a general way where it was situated, yet it had never occurred to him that it was an element of danger. It was also shown that his attention at the time he received the injury was directed to another member of the crew, from whom he was receiving, and through whom he was transmitting, signals to and from the engineer, and his attention was thus diverted from the shanty.

Considering the foregoing facts, we are of opinion that this case should be ruled by *Texas & P. R. Co. v. Swearingen*, 196 U. S. 51, where it was said: "An employee is entitled to assume that his employer has used due care to provide reasonably safe appliances for the doing of his work. Knowledge of the increased hazard resulting from the negligent location in dangerous proximity to a railroad track of a structure will not be imputed to an employee, using ordinary diligence to avoid it if properly located, because he was aware of its existence and general location. It is for the jury to determine from all of the evidence whether he had actual knowledge of the danger."

It seems clear to us that in the case at bar the question of assumption of risk was properly submitted to the jury; that their verdict is sustained by the evidence. This requires an affirmance of the judgment, unless we declare, as a matter of law, that the plaintiff assumed the risk, and was therefore guilty of contributory negligence. Considering the nature of the evidence, we cannot so hold.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.