CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY
v. PETER H. SODERBERG.

FILED FEBRUARY 16, 1897. No. 7104.

1. **Master and Servant: RISKS OF EMPLOYMENT.** A servant by his contract of employment assumes the ordinary risks and dangers incident thereto.

2. **Negligence: EVIDENCE.** To sustain a verdict for negligence it must have the support of competent positive evidence that the injury complained of was caused by the negligence of the defendant, or such negligence must be fairly and reasonably inferable from proved or conceded facts.

3. ——: ——. Evidence examined, and *held* not sufficient to sustain a finding of negligence.

ERROR from the district court of Kearney county. Tried below before BEALL, J. *Reversed.*

The opinion contains a statement of the case.

*J. W. Deweese,* for plaintiff in error:

The requirement of the statute in reference to signals at public crossings imposes an obligation upon the company toward people who are crossing or are about to cross the railroad track on the public highway, and no one else can claim the enforcement of these signals. (*Bohan v. Milwaukee, L. S. & W. R. Co.,* 61 Wis., 394; *Spicer v. Chesapeake & O. R. Co.,* 12 S. E. Rep. [W. Va.], 553; *Christy v. Chesapeake & O. R. Co.,* 12 S. E. Rep. [W. Va.], 1111; *Rawlston v. East Tennessee, V. & G. R. Co.,* 20 S. E. Rep. [Ga.], 123; *East Tennessee, V. & G. R. Co. v. Smith,* 20 S. E. Rep. [Ga.], 127; *Lundquist v. Duluth Street R. Co.,* 67 N. W. Rep. [Minn.], 1007.)

Plaintiff below assumed the risk and danger from passing trains. There was no evidence of any rule or custom requiring the foreman to warn trackmen of the approach of a train. The company is not chargeable with the alleged negligence of the foreman in failing to give warning of danger. The foreman and the men in the gang were fellow-servants. (*Jackson v. Missouri P. R. Co.,* 104 Mo., 456; *Thomas v. Missouri P. R. Co.,* 18 S. W. Rep. [Mo.], 980; *Shepard v. Boston & M. R. Co.,* 33 N. E. Rep. [Mass.], 508; *Cooney v. Great N. R. Co.,* 37 Pac. Rep. [Wash.], 440; *Sullivan v. Fitchburg R. Co.,* 36 N. E. Rep. [Mass.], 751; *Ell v. Northern P. R. Co.,* 48 N. W. Rep. [N. Dak.], 223; *Elliott v. Chicago, M. & St. P. R. Co.,* 150 U. S., 245; *Baltimore & O. R. Co. v. Baugh,* 54 Am. & Eng. R. Cas. [U. S.], 340; *Northern P. R. Co. v. Hambly,* 154 U. S., 356; *Northern P. R. Co. v. Charless,* 162 U. S., 359; *Northern P. R. Co. v. Peterson,* 162 U. S., 346; *Walker v. Kinnare,* 76 Fed. Rep., 101; *Railway Co. v. Leech,* 41 O. St., 389; *Ring v. Missouri P. R. Co.,*

20 S. W. Rep. [Mo.], 436; *Jolly v. Detroit, L. & N. R. Co.*, 53 N. W. Rep. [Mich.], 526; *Olson v. St. Paul, M. & M. R. Co.*, 33 Am. & Eng. R. Cas. [Minn.], 386; *Nelling v. Chicago, St. P. & K. C. R. Co.*, 63 N. W. Rep. [Ia.], 568.)

*W. S. Morlan* and *J. L. McPheely*, also for plaintiff in error.

*Ed L. Adams*, contra.

References: *Schlereth v. Missouri P. R. Co.*, 19 S. W. Rep. [Mo.], 1134; *Sioux City & P. R. Co. v. Smith*, 22 Neb., 775; *Chicago, B. & Q. R. Co. v. Sullivan*, 27 Neb., 673; *Chicago, St. P. & M. R. Co. v. Lundstrom*, 16 Neb., 258; *Little M. R. R. Co. v. Lewton*, 20 O. St., 401; *Lake Shore & M. S. R. Co. v. Lavelley*, 36 O. St., 221; *Burlington & M. R. R. Co. v. Crockett*, 19 Neb., 138; *Union P. R. Co. v. Billeter*, 28 Neb., 422; *Gulf Coast & S. F. R. Co. v. Wells*, 16 S. W. Rep. [Tex.], 1025; *Missouri P. R. Co. v. Williams*, 12 S. W. Rep. [Tex.], 835; *Louisville, N. A. & C. R. Co. v. Graham*, 24 N. E. Rep. [Ind.], 668; *Sherrin v. St. Joseph & S. L. R. Co.*, 15 S. W. Rep. [Mo.], 442; *Davis v. New York, N. H. & H. R. Co.*, 159 Mass., 532; *Texas & P. R. Co. v. Lewis*, 26 S. W. Rep. [Tex.], 873.

RYAN, C.

Plaintiff in error in this case seeks a reversal of a judgment in the sum of $5,000 which was rendered by the district court of Kearney county upon the verdict of a jury. The defendant in error, whom we shall hereafter refer to as the plaintiff, because he was plaintiff in the district court, alleged, in substance, that on May 22, 1893, he was a section hand in the employ of the railroad company; that in the forenoon of that day, while the wind was blowing very hard and rain was falling, he, under the direction of a foreman, was working on the railroad at a point about fifty-seven rods east of a highway crossing, and that about twenty-three rods east of where he was at work there was a post, at which post the employes in

charge of trains of the railroad company were required to ring a bell and sound a whistle until the aforesaid highway should be reached; that the point where he was working was near the foot of a grade descending from the east; that trains coming down said grade usually made but little noise, other than by the escape of steam, which on said morning could not be heard. The negligence charged was the failure to sound the whistle and ring the bell as it was above indicated should have been done, and the failure of the foreman of the section gang to give notice of the approaching train before it struck the plaintiff.

The following facts appear without contradiction from the evidence adduced: The section gang, in the forenoon of May 22, 1893, was required by the unfinished condition of the work to surface up a portion of the track at a point about three and one-half miles east of Minden, the station nearest where the work was to be done. The day began with considerable wind, which grew stronger, and at about 9 o'clock, when the accident happened, was blowing very hard. There were occasional showers of rain, accompanied with sleet. The foreman was Henry Hamelius, and the gang was composed of five men, J. H. Showers, Albert Holstein, Oscar Holstein, Albert Thigh, and the plaintiff, Peter H. Soderberg. The whistling post was at the west end of a cut, and west of this post was a bridge, 540 feet distant. This post, as stated in the petition, was eighty rods east of a highway crossing. The foreman distributed his men along a high grade approaching this bridge, Soderberg being placed about ninety feet east of the bridge and directed to throw earth from the south side of the embankment upon the ties, and there so to dispose of it that the water would run each way from the center of the track. The two Holsteins were between twenty and thirty feet east of Soderberg, and Showers was ninety feet east of him on the north side of the track. No one described the position of Thigh. The foreman, after he had disposed of his men

·as above indicated, noticed that one side of the bridge ·seemed a little low, and thereupon he went under it to ·see if there was anything wrong. When he had finished his inspection the foreman came up on the track at the ·east end of the bridge, and looking eastward he saw, at a ·distance of about a quarter of a mile, a freight train approaching, and immediately called to his men notifying them of that fact. At this time Soderberg was on the embankment outside the south end of the ties, and was stooped over throwing earth upon the ties between the rails. Albert Holstein testified on behalf of plaintiff that, though fifteen feet away, he could not by calling to him three or four times make plaintiff aware of the approach of the train. Oscar Holstein, though he was within fifteen or twenty feet of his brother, Albert, was not able to understand what he was calling out. He saw that he was calling out something, and, looking in the direction he was pointing, discovered the approaching train. He further testified that it was a dreadful windy and stormy day. Peter Soderberg testified, but his testimony threw no light on the subject. The above was all the evidence given as to the surroundings and employment of Soderberg when struck by the train. It was a regular train and was on its schedule time. The foreman was not shown to be outside the line of his duty in making an inspection of what appeared to be a dangerous condition of the bridge. There was evidence that tended to show that this foreman had said to his men that in the yards and while moving over the track in a hand car he would look out for trains, and that the men need not trouble themselves to be also looking. There was no evidence that when his section men were surfacing the track the foreman, by reason of any promise, rule, or custom, was required to warn them of the approach of trains. They had the same means of knowing of this fact that he did. The track from where Soderberg was ran in a northeasterly direction, and a high wind was blowing from the north, so that, without doubt, he was

unaware of the impending danger, and, though no one testified just how it happened, it is doubtless true that in a stooped position he was standing close enough to the track to be struck by the engine when it reached him. He was, however, bound to know that trains were likely to be moving along this track, and there is undisputed evidence that if he had looked eastward he could have seen this train almost a half a mile distant.    It was held by this court in *Dehning v. Detroit Bridge & Iron Works*, 46 Neb., 556, that it will be presumed that an employe contracts with reference to the risks ordinarily appertaining to his particular employment, and that he has notice of all the risks which are open and obvious, or ought to have been to a person of his experience and understanding. In *Missouri P. R. Co. v. Baxter*, 42 Neb., 793, this rule was stated in the first paragraph of the syllabus in this language: "A servant by his contract of employment assumes the ordinary risks and dangers incident thereto." The rule being as we have just stated, it was not a duty devolved upon the railroad company to require of its section foreman that he should exercise the only diligence necessary to prevent section men being struck by trains moving along the railroad undergoing repairs.    These views are in accord with those expressed in *Ring v. Missouri P. R. Co.*, 20 S. W. Rep. [Mo.], 436, and *Nelling v. Chicago, St. P. & K. C. R. Co.*, 63 N. W. Rep. [Ia.], 568.

It is, however, insisted that it was shown that there was negligence in failing to ring the bell and sound the whistle for the crossing from the time the engine passed by the whistling post until it reached such highway crossing.    The engineer testified in the most positive terms that the bell was arranged to ring automatically, and that on account of the high wind and the storm it was kept ringing from the time the engine left Hastings until it reached Minden.    He also testified that he sounded the whistle from the time he left the whistling post until he reached the highway crossing.    The fireman testified that he was so accustomed to the sound of the bell and whistle

that he did not notice either. The foreman's testimony was that if there had been no wind or storm he could have heard the whistle and bell, but with both wind and storm prevailing as it did, he did not know whether he could have heard them or not. As it was, he did not hear the bell or whistle. The effect of the testimony of the other witnesses was that they did not hear the bell or whistle, but whether they could have heard the sound if either had been used, notwithstanding the wind and the storm, they did not undertake, nor were they required, to state. The burden of showing negligence rested upon the plaintiff. (*Spears v. Chicago, B. & Q. R. Co.*, 43 Neb., 720.) As was said in *Kilpatrick v. Richardson*, 40 Neb., 478: "For that verdict to stand it must have for support competent, positive evidence that the injury was caused through the negligence of the plaintiffs in error, or such negligence must be fairly and reasonably inferable from proved or conceded facts in evidence." (See, also, *Kearney Canal & Water Supply Co. v. Akeyson*, 45 Neb., 636.) The evidence as to the failure to ring the bell or sound the whistle was scarcely strong enough to raise a mere conjecture, most certainly it could do no more. The plaintiff was outside the rails, and even beyond the ties, and there is no claim that the engineer failed or neglected to do his duty upon seeing plaintiff in a dangerous place; indeed, no one seems to have known beforehand that plaintiff was in dangerous proximity to the track, or even how it happened that he was struck, more definitely than that before the engine reached him he was outside the track, and by the time it reached him he was close enough to the track to come in contact with some part of the locomotive. He may have been that near the track for some little time, or he may have moved nearer just before he was struck; no one could describe how it was. We are of the opinion that there was not sufficient evidence to justify a finding that any employe of the railroad company was guilty of negligence, and the judgment of the district court is therefore reversed and the case is re-

manded for further proceeding consistent with the views above expressed.

REVERSED AND REMANDED.