ROGERS et al., Respondents, v. MEYERSON PRINT-
ING COMPANY, Appellant.

St. Louis Court of Appeals, December 15, 1903.

1. **DAMAGES: Personal Injuries: Contributory Negligence: Pre-
sumption of Care.** In an action to recover damages for per-
sonal injuries, until the evidence is introduced which bears on
the question, the presumption obtains that the person injured is
careful instead of negligent.

2. ———: ———: ———: **Degree of Care for Person of Tender
Years.** In an action by the parent for damages sustained on
account of the death of their minor son, caused by the negli-
gence of his employer, where the defense was contributory
negligence on the part of the deceased, it was proper for the
court to instruct the jury that the deceased, a boy of thirteen
years, was bound to exercise only such care and prudence as
reasonably might be expected of a boy of his age and capacity
in the same circumstances, and that the law does not require
as high care from a person of tender years and imperfect dis-
cretion as from one of mature years and discretion.

3. **MASTER AND SERVANT: Safe Place to Work: Duty of Mas-
ter.** The duty of the master to furnish his servant a safe place
to work, charges him with the duty of taking care to avert a
casualty, when, by reasonable prudence, he could have known
there was danger of its occurrence.

4. ———: ———: ———. Where defendant's building had an
unbarred window extending two and one-half feet above the
landing of a stairway, down which the minor son of plaintiffs,
in the employ of defendant, was descending when he fell
through the window, producing the injuries for which suit is
brought. and the evidence showed that a workman had pre-
viously fallen through the same or a similar window, and the
defendant had warned the boys in his employ not to slide down
the banister of that stairway lest they might fall through the
window, the question was properly submitted to the jury as to
whether defendant was negligent in not providing guards or
bars for the windows.

Appeal from St. Louis City Circuit Court.—*Hon. J. R. Kinealy,* Judge.

AFFIRMED.

*Kehr & Tittmann* for appellant.

(1) Having offered an instruction of nonsuit at the close of plaintiffs' case, which the court refused to give, and having offered a peremptory instruction to find for defendant at the close of the case, and having duly preserved the point, we are entitled to a review by the court of the whole evidence in the case. Hilz v. Railroad, 101 Mo. 36; Weber v. Railroad, 100 Mo. 194; Hite v. Railroad, 130 Mo. 132; Fuchs v. City of St. Louis, 167 Mo. 631. (2) The petition alleges that "while said Walter Rogers was on his way back, coming down said stairway, in obedience to his orders and directions as aforesaid, said Walter Rogers fell down said stairway and upon said landing, and without any fault or negligence on his own part was precipitated through said window and fell to the street, about forty feet below said window, and was thereby fatally injured, etc." There is not even a scintilla of proof to support this allegations of plaintiffs' petition. The allegations of plaintiffs' cause of action were unproved in their entire scope and meaning. There was, therefore, a failure of proof. R. S. 1899, secs. 286 and 798. (3) The record shows that the verdict of the jury and the consequent judgment thereon, are contradictory of and in opposition to conceded and undisputed physical facts, as developed by plaintiffs' evidence, and should, therefore, not be permitted to stand. Payne v. Railroad, 136 Mo. 562; Nugent v. Kauffman Milling Co., 131 Mo. 241; Weltmer v. Bishop, 171 Mo. 110. (4) The evidence in this case shows that the injury to the deceased resulted from one of two causes, for neither of which defendant is liable. But, assuming that defendant would be liable

Rogers v. Meyerson Printing Co.

for one of them, yet the plaintiffs must show, not by conjecture, but by a reasonable inference and with reasonable certainty, that the cause for which defendant is liable actually produced the result; if the evidence leaves it to conjecture merely the plaintiffs must fail. Smart v. Kansas City, 91 Mo. App. 586; Sarles v. Railroad, 101 N. Y. 661; Bond v. Smith, 113 N. Y. 378; Pauley v. Steam Co., 131 N. Y. 90; Linklauf v. Lombard, 137 N. Y. 417. (5) No one is liable for the consequences of an inevitable accident. It is not negligence not to take precautionary measures to prevent an injury which, if taken, would have prevented it, when the injury could not have been reasonably anticipated and would not, except under exceptional circumstances, have happened. If the accident was possible, yet, according to ordinary and usual experience, not probable, it is not negligence not to take precautionary steps against it. Lawless v. Gas Light Co., 72 Mo. App. 679; Brewing Co. v. Talbot, 141 Mo. 683; Glover v. Bolt & Nut Co., 153 Mo. 327; Sjogren v. Hall et al., 53 Mich. 274; Nelson v. Railroad, 30 Minn. 74; Dougan v. Champlain Co., 56 N. Y. 1; Loftus v. Union Ferry Co., 84 N. Y. 455; Lafflin v. Railroad, 106 N. Y. 136; Dwyer v. Hills Bros., 79 N. Y. App. Div. 45. (6) All the physical and undisputed facts show that the death of Walter Rogers was due to his own contributory negligence. Defendant's negligence, if any, is therefore immaterial. Hudson v. Railroad, 123 Mo. 445; Hogan v. Railway, 150 Mo. 55.

*Cunningham & Maurer* for respondents.

(1) The defendant's demurrer was properly overruled. Buesching v. Gas Light Co., 73 Mo. 219, 231, 233; Wilson v. Board of Education, 63 Mo. 137; Drain v. Railroad, 86 Mo. 574; Petty v. Railroad, 88 Mo. 306; Keim v. Railroad, 90 Mo. 314; Craney v. St. Louis, 141 Mo. 180. (2) The defendant was guilty of negligence in failing to guard the window, especially after the dan-

ger became apparent, and under the evidence and plead-
ings the court was bound to submit the cause to the
jury.   Bullmaster v. St. Joseph, 70 Mo. App. 60; Keim
v. Railroad, 90 Mo. 314; Fernandes v. Railroad, 52 Cal.
45; Gay v. Winter, 34 Cal. 153; Hoyt v. City of Hudson,
41 Wis. 105; Curtis v. McNair, 73 S. W. 167.

GOODE, J.—Respondents' son, Walter Rogers,
was killed while performing his duty as an employee of
the appellant company and this action was brought by
the parents for the damages sustained by his death,
which is ascribed in the petition to negligence on the
part of the appellant.   The fatal accident was of a sing-
ular kind, as will appear from a statement of the facts,
so far as they are known.   The printing company did
business in a four-story building on the southwest corner
of Third and Vine streets in the city of St. Louis.
Between the third and fourth stories, on the north side
of the building, were two flights of stairs of ten steps
each, the lower flight rising from the third story to a
platform or landing midway between the two stories and
the other flight rising to the fourth story.   The steps
were wide enough and of low height.   On the right hand
in ascending, left hand in descending, was a banister.   It
curved at the platform on an arc whose chord was nine
inches.   The landing platform between the two stories
was, as we gather, about seven feet wide and more than
eight feet long.   A window in the north wall of the build-
ing occupied the middle space of that part of the wall
across which the platform extended.   This window was
a little over four feet wide and each sash (the upper
and lower) had two panes of glass in it about two feet
wide.   Only two feet and seven inches of the window
projected above the platform, the other eight feet ex-
tending below.   The window was arched at the top and
the arch was, of course, narrower toward its center than
at the sides.   The banister running from the fourth
story to the landing would, if prolonged, have struck the

window just four inches east of the center. The center of the window coincided with the center line of the curve of the banister at the landing, which curve, as stated, was nine inches across; that is, a line prolonged from the center of the curve would strike exactly in the center of the mullion of the window; and as the chord of the curve was nine inches long, the upper banister would thereby be thrown a little over four inches east of the mullion.

During the afternoon of May 16, 1901, Walter Rogers, then a lad thirteen years old, was sent to the fourth story of the building and after dispatching his errand, started to return to the third story. When next seen he was in the air outside the building, having fallen through the east pane of the window at the landing, whence he dropped into the middle of Vine street and was killed. He was seen in his descent by a workman engaged in a building across the street. The negligence charged against the defendant was failing to guard and protect the window above the stair landing, which is alleged to have been dangerous in its unguarded state.

One position assumed by the appellant is that the boy Walter lost his hold while sliding down the rail of the banister, slipped off and plunged through the window at the foot. On this assumption he is said to have caused his death by his own negligence. There is testimony that he and other boys who worked on the premises were in the habit of half sitting, half lying on the railing with their heads leaned slightly outside of it and their feet inside and sliding down, and that they had been warned against the prank. There is no positive and very slight circumstantial evidence that at the time Walter was killed he slid down the banister. A mark was found on the platform, beginning a few inches from the window and running to the edge of the platform, which was thought to have been scraped by the boy's heel, and to show he had slipped off the banister; but the inference could as well be drawn that he had slipped from the stairs to the landing and made the mark. An

argument designed to show that the physical facts demonstrate the boy slipped from the banister through the window, is addressed to us by appellant's counsel; but while the reasoning is satisfactory on the proposition that the accident could have happened that way, it falls short of demonstrating that it must. Until evidence was in which bore on the question, the presumption obtained that the deceased was careful instead of negligent; and it was for the appellant to overcome that presumption by positive or circumstantial evidence proving him to have been careless. The issue was referred to the jury in all the instructions, and they must have found the boy was free from negligence. Appellant's counsel contend the court erred in advising the jury that the deceased was bound to exercise only such care and prudence as reasonably might be expected of a boy of his age and capacity in the same circumstances, and that the law does not require as high care from a person of tender years and imperfect discretion as from one of mature years and discretion. The court's charge was in harmony with the prevalent rule of law in this State in regard to the negligence of children. Donoho v. Iron Works, 7 Mo. App. 447, 75 Mo. 401; Schmitz v. Railroad, 119 Mo. 256; Van Natta v. Railway, 133 Mo. 13. Appellant's counsel argue as if the fact that the boy 'slid down the banister conclusively established negligence on his part, and the lower court adopted that theory and gave an instruction which directed the jury to return a verdict for the appellant if they found the deceased was killed by slipping from the rail and dashing through the window. Appellant surely got all it was entitled to in that charge on the particular point we are dealing with, and has no room for complaint. In view of our decision that the evidence as to the manner of the accident afforded ground for a finding against the banister theory, we must presume the jury returned a verdict for the respondents because they rejected the conclusion that the deceased rode down the railing, and

with it the hypothesis that he was negligent in so doing.

Another defense relied on is that the appellant was guilty of no negligence in failing to guard the portion of the window which projected above the landing—that the risk of a servant, or other person having business on the premises, falling through the window was so remote as to excuse the appellant from anticipating such an event and taking precautions against it. To one not familiar from observation with the position of the window and the landing, the occurrence of an accident like the one that befell the deceased would appear from the evidence to be extremely improbable; and we might be inclined to accede to the appellant's contention on this point but for certain facts disclosed by the testimony. Before stating them, let us revert for a moment, to elementary principles in order to better appreciate the legal force of the facts. If an injury occurs which a prudent man, all the circumstances considered, would have been unlikely to anticipate, it is referable to the category of inevitable accidents. Graney v. Railroad, 157 Mo. 666; Fuchs v. St. Louis, 167 Mo. 620. It is axiomatic that whether a man must take precautions to prevent injury to others in order that he may stand exonerated from blame for an injury if one happens, depends on his previous knowledge of facts adapted to excite in a prudent mind an apprehension of the harmful event transpiring. Smith v. Car Co., 60 Mich. 501, 1 Am. St. 542; Bowen v. Railroad, 95 Mo. 268. One form in which the rule has been laid down is that a person is guilty of no want of ordinary care, and hence, is not responsible for an injury, if he behaves, everything considered, as men of prudence would have behaved. Hogan v. Railroad, 150 Mo. loc. cit. 49. Appellant's counsel insist that a man of common prudence would never have thought of a person falling, by any mischance, through the window above the platform. But this argument is prostrated in the present case by testimony which shows that prior

to the accident there had been good cause to anticipate such a mishap and that, in fact, it had been anticipated by Samuel F. Meyerson, the president of the appellant company. When the appellant was moving into the building a workman who was assisting in placing a press, fell from one of the windows; and as well as we can tell from the testimony, the accident was similar to the one which resulted in the death of the plaintiffs' son, in respect to the workman falling through the top of a window from a stair-landing. The testimony certainly leaves that impression; but as our statement of this matter is said by appellant to be unsupported by the record, we will transcribe all the evidence bearing on it:

"Q. During the time that you were there had any accident of this nature ever happened in that building? A. Not of that kind.

"Q. I mean of anybody falling out of the top of one of those windows? A. There was an accident from the window when the firm moved into the building.

"Q. I mean while Meyerson was running the establishment? Did any employee ever fall from the platform through one of those windows? A. No, sir.

"Q. You made a statement a few minutes ago; I don't want to have any misunderstanding about it, that there had been an accident when you were moving in? A. Yes, sir.

"Q. Was that anything more than the fact that a crowbar fell out of the window? A. One of the laborers moving a press fell out with the crowbar.

"Q. While the laborers were moving into the building some one with a crowbar fell out of the window? A. Yes, sir.

"Q. And that laborer was not even working for Mr. Meyerson? A. I don't know."

Furthermore, Mr. Meyerson swore the boys employed in the establishment were in the habit of sliding down the banister rail. Many boys had been warned many times against doing so, he said, because he knew

they might fall through a window; and particularly had Walter Rogers been warned of the risk. This shows Meyerson knew the windows were in an unsafe condition. It will not do to say an event could not have been anticipated when the evidence shows it was anticipated. As no precaution was taken to prevent such a fatality, except to warn the boys to refrain from sliding down the banisters, the decision of the case hinges on the adequacy of that precaution as constituting a full discharge of its duty by appellant, so that the court may exonerate it from liability for the fatality on proof that warning was given.

Was that enough to satisfy the law, or did the jury have a right to conclude the appellant was bound to guard the window in order to perform its duty to use ordinary care to prevent a casualty? To our minds it is scarcely debatable that it was a question for the jury whether some simple precaution that would render such an accident impossible, like barring the window, ought not to have been taken by the appellant company after its officers knew one person had fallen through an unbarred window and apprehended the like misfortune to some other employee. A casualty can not be classed as a pure accident for which no one is to blame, merely because it would happen infrequently, if the danger of its occurrence was present to the mind of the party who was charged with the duty of taking care to avert the casualty, or if, by reasonable prudence, he could have known there was danger of its occurrence. An unfenced area by a street, like the one into which Beusching fell (Buesching v. St. Louis Gas Light Co., 73 Mo. 219) would not often cause death or injury; for almost all passersby would miss or avoid the hole, as thousands had before Buesching fell into it and was killed. None the less, it was negligence to leave the place unguarded; because some one was liable to fall into it at any time, as could be readily seen. An accident properly so-called, is where the cause of the event was so unusual

that common foresight could not anticipate it.     As the liability of the very catastrophe that happened to Walter Rogers was foreseen, it was not an accident for which the appellant was blameless if it was preventable by ordinary care.

Many cases have been cited by counsel in which casualties were ascribed to causes which could not have been foreseen; but none of them presents the facts most prominent in the present controversy.     In Lawless v. Laclede Gas Light Co., 72 Mo. App. 679, the plaintiff, while digging a trench for the defendant, got his feet wet by water bursting into the trench from an old cistern.     The water was poisonous and generated a disease in plaintiff's system.     It was held that the defendant could not have anticipated such an effect and, therefore, was not responsible.

In Am. Brew. Co. v. Talbot, 141 Mo. 674, malt stored in defendant's warehouse was destroyed by the caving in of the premises on account of an unprecedented flood of the Mississippi river.     That loss was plainly due to the act of God.

In Sullivan v. Railroad, 133 Mo. 1, a passenger on an open summer car, after lighting a cigar, threw the match so that it ignited the plaintiff's dress, burning her severely.     The decision was that the railway company could not reasonably have anticipated such a mischance and was not to blame for it.

In Fuchs v. City of St. Louis, 167 Mo. 620, a sewer exploded, from what cause was not shown, although it was claimed to have been due to the presence of a large quantity of kerosene which had flowed into it.     The decision was that as a sewer explosion was never known before, the city had no reason to expect one and was not called on to take preventive measures.

In Dugan v. Champlain Co., 56 N. Y. 1, plaintiff's intestate was drowned by slipping under a guard-rail on the deck of defendant's boat.     The hat of deceased blew off, he sprang to recover it, slipped and fell over-

board.   Boats of the same construction had been used for many years, the guard-rail had always proven sufficient to prevent passengers from falling into the water and there was no evidence that the company's officers had thought of such an accident.   Loftis v. Ferry Co., 84 N. Y. 455, is a case in which the facts were that a child while passing from a ferry boat to the land, fell through an open span beneath the guard-rail and was drowned. The evidence showed that forty million persons annually passed off the boat, that no accident of the kind had occurred before, and no proof was made that the possibility of the occurrence had been foreseen.

Without saying more, it is sufficient to state that in none of those precedents was it shown that the defendant actually anticipated such a fatality as happened on account of a similar one having happened before; but on the contrary, in all of them previous experience taught the extreme improbability of the misfortune.   A master must furnish a servant a reasonably safe place to work; and the inference that one is remiss in that regard if he leaves small boys in his employ exposed to the danger of death by falling through a window, after he fully realizes the danger and has had one accident of the sort befall, can not be denounced as unwarranted.

Some minor criticisms which we have examined and deem undeserved, are indulged in concerning the court's instructions.   The instructions were few and clear, and, we think, presented the issues to the jury in a manner that was accurate and easily understood.

The judgment is affirmed.   *Bland, P. J.,* and *Reyburn, J.,* concur.