OBERMEYER, JR., by his next friend, Respondent, v. LOGEMAN CHAIR MANUFACTURING COMPANY, Appellant.

St. Louis Court of Appeals, July 9, 1906.

(Opinion by Bland, P. J.)

1. **MASTER AND SERVANT:** Elevators: Negligence. Freight elevators do not require to be wholly enclosed to save employees using them from injury, but where a freight elevator was not enclosed at all, and the evidence was conflicting as to whether the shaft was properly constructed at the floors through which it passed, it was a question for the jury as to whether the construction was negligent so as to make the employer liable for injuries incurred by an employee while using it.

2. ———: ———: Contributory Negligence. Where a boy fourteen years old employed in a factory was ascending on an elevator in the pursuance of his duties and, while leaning on the shoulder of another boy who stepped back on his foot, to relieve his foot drew it back so that it was caught between the floor of the elevator and the strip across the floor beams

of one of the floors through which the elevator passed, whereby he was injured, it was a question for the jury as to whether he was guilty of contributory negligence which would prevent his recovery.

3. ———: ———: **Assumption of Risk.** Where the master is negligent in furnishing a servant an unsafe place to work, the servant does not *assume the risk* of injury by such negligence although he knows, or by the exercise of ordinary care could know, that the place is unsafe.

4. ———: ———: **Contributory Negligence.** But if the place provided for him to work is so obviously dangerous that a reasonably prudent man would not attempt to work in it, the servant by remaining there is guilty of *contributory negligence* so as to prevent recovery in case he is injured.

5. ———: ———: **Negligence of Fellow-servant.** While an employee was riding on a freight elevator of his employer in the performance of his duty, another employee stepped on his foot, thereby causing him to draw his foot away so that it was caught between the floor of the elevator and one of the floors through which the elevator passed, whereby he was injured, the employer was liable for the injury received provided the negligent construction of the elevator shaft concurred with the negligence of the fellow-servant in stepping on the foot of the one injured in producing the injury.

6. **EVIDENCE: Confidential Communications: Physicians.** Where an employee was injured while engaged in the performance of his duty and a physician was called by the employer to treat him, statements made by the employee to the physician, while the latter was in attendance upon him, in relation to how the accident occurred, were properly excluded.

7. ———: **Expert Testimony: Elevators.** In the action for injuries caused to plaintiff while working on an elevator of his employer, the defendant, expert testimony as to whether the construction of the elevator shaft was dangerous was properly permitted; whether the elevator shaft was constructed in the usual manner of constructing them was not conclusive in the matter.

(Dissenting Opinion by Nortoni, J.)

8. **MASTER AND SERVANT: Assumption of Risk: Continuing in Service after Knowledge.** Where a servant continues in the employment of his master after knowing that an appliance with which or the place in which he is put to work has become dangerous, he assumes the risk incident to such dangerous appliances.

Obermeyer v. Chair Mfg. Co.

9. ——: ——: ——: **Elevators.** Where a boy was hurt while riding on the freight elevator of his employer on account of the defective construction of the elevator shaft, in an action for such injuries, the jury should be instructed that if the boy had knowledge and understanding of the character of the construction and the danger involved, and continued to use it after such knowledge, he could not recover.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*Wise & McNulty* and *Seddon & Holland* for appellant.

(1) The court erred in refusing to give the peremptory instruction offered by appellant at the close of all the evidence. (a) Because there was no evidence to sustain any of the allegations of negligence contained in respondent's petition. (b) Because the evidence clearly showed that the risk or riding on the elevator was assumed by the respondent. Devitt v. Railroad, 50 Mo. 302; Cagney v. Railroad, 69 Mo. 416; Smith v. Railroad, 69 Mo. 32; Price v. Railroad, 77 Mo. 510; Flynn v. Railroad, 78 Mo. 195; Nugent v. Milling Co., 131 Mo. 241, 33 S. W. 428; Lucey v. Hannibal Oil Co., 129 Mo. 32, 31 S. W. 340; Fugler v. Bothe, 117 Mo. 475, 22 S. W. 113; Steinhauser v. Spraul, 127 Mo. 541, 28 S. W. 620, 30 S. W. 102; Epperson v. Postal, 155 Mo. 346, 50 S. W. 795, 55 S. W. 1050; Roberts v. Telephone Co., 66 S. W. 157; Mathias v. Kansas City, etc., 84 S. W. 66; Washington, etc., R. R. Co. v. McBride, 135 U. S. 554; Choctaw & Oklahoma v. McDade, 191 U. S. 64; Miller v. Cordage Co., 126 Fed. 195; Higgins v. Carpet Co., 79 Fed. 900; Kneisley v. Pratt, 148 N. Y. 372; Sullivan v. Mfg. Co., 113 Mass. 396; Goodrich v. Washington Mills, 160 Mass. 234; O'Malloy v. Boston Gas, 158 Mass. 135. (2) The court erred in giving instruction No. 1 at the instance of respondent. Stone v. Hunt, 114 Mo. 66, 21 S. W. 454;

State v. Hope, 102 Mo. 410, 14 S. W. 985; Evans v. Interstate Co., 106 Mo. 59, 17 S. W. 489; State v. Brown, 145 Mo. 680, 47 S. W. 789; Wilkerson v. Eilers, 114 Mo. 345, 21 S. W. 514. (3) The court erred in giving instruction No. 2 at the instance of respondent. Because under the evidence in this case respondent did assume the risk of being injured as he was. See authorities under heading 1 supra. (4) The court erred in refusing to allow appellant's witness, Dr. Amyx, to testify in regard to a conversation between himself and respondent on the day of the accident when, in the presence of several witnesses, including appellant's treasurer, the respondent stated how the accident happened. (a) Because the particular communication sought to be elicited from this witness was not one that was made by the patient in order to enable the physician to properly treat him. Wigmore on Evidence, par. 2383. (b) It was not privileged because it was made by the respondent to his physician in the presence of several witnesses, one of them being the treasurer of appellant company. Deuser v. Walkup, 43 Mo. App. 625; Scherstein v. Scherstein, 68 Mo. 235; Long v. Martin, 152 Mo. 668, 54 S. W. 473; Long v. Martin, 71 Mo. App. 569; 23 Am. and Eng. Ency., page 96; Wigmore on Evidence, par. 2311; Sharron v. Sharron, 79 Calif. 635-677; Goddard v. Gardner, 28 Conn. 172; Hartford Co. v. Reynolds, 36 Mich. 502; House v. House, 61 Mich. 69; People v. Buchanan, 145 N. Y. 1; Hummell v. Kistner, 182 Pa. St. 216.

*Muench, Walther & Muench* and *A. R. Taylor* for respondent.

(1) An elevator is in many respects a dangerous machine and although primarily intended only as a freight elevator, yet, if employees in the course of their employment are directed to use the elevator as a means of transportation, the employer controlling the

operation of the elevator is required to exercise great care and caution in the construction of the elevator so as to render it as free from danger as careful foresight and precaution may reasonably dictate. Wise v. Ackerman, 76 Md. 375; Strawbridge v. Bradford, 128 Pa. St. 200; McKinnie v. Kilgallon, 11 Atl. 614; 10 Am. and Eng. Ency. of Law, p. 952; Webb on Elevators (2 Ed.), sec. 15; Ferriss v. Aldridge, 12 N. Y. Supp. 482; McGill v. Bldg. Co., 90 Hun 30; Rogers v. Meyerson, 103 Mo. App. 683. (2) In determining whether due diligence was exercised in constructing the elevator, the usage of others is not the sole criterion, and it cannot be concluded that, as a matter of law, due diligence has been employed because the elevator is such as is ordinarily used for like purposes by reasonably prudent men. Webb on Elevators (2 Ed.), sec. 15; Lee v. Knapp, 55 Mo. App. 390, 406. (3) Assumption of risk is an affirmative defense, and where the defendant relies upon assumption of risk by the servant of a risk not ordinarily incident to the employment, the defense must be specially pleaded. Fisher v. Lead Co., 156 Mo. 485, 56 S. W. 1107; 13 Ency. of Plead. and Pr., 914; Young v. Iron Co., 103 Mo. 342, 15 S. W. 771; McMullen v. Railway, 60 Mo. App. 238; Cummings v. Collins, 61 Mo. 520. (4) The servant never assumes the risk of the master's negligence. Warren v. Railway, 87 S. W. 585; Pauck v. St. Louis Beef & Prov. Co., 159 Mo. 476, 61 S. W. 806; Nichols v. Plate Glass Co., 126 Mo. 66, 28 S. W. 991; Reed v. Railway, 94 Mo. App. 379, 68 S. W. 364; Curtis v. McNair, 173 Mo. 270, 73 S. W. 167; Wendler v. People's H. F. Co., 165 Mo. 527, 65 S. W. 737; Gibson v. Railroad, 46 Mo. 163; Bender v. Railway, 137 Mo. 240, 37 S. W. 132; Labatt on Master and Servant, secs. 2-4. (5) If the master fails in his duty to furnish safe appliances, and the servant knows that the appliances furnished are not safe, the servant is not obliged to refuse to use the appliances or quit the service of the master if he rea-

sonably believes that by the exercise of proper care and caution he can safely use the appliances notwithstanding they are not so reasonably safe, and if he does so use them, the servant does not waive his right to compensation for injuries received. Parsons v. Packing Co., 96 Mo. App. 383, 70 S. W. 519; Haworth v. Railway, 94 Mo. App. 215, 68 S. W. 111. (6) Negligence of the master in furnishing appliances not reasonably safe being shown, the question arising from the use by the servant of the appliances, with knowledge of the defects, is one of contributory negligence. Stafford v. Adams, 88 S. W. 1130; Shepard v. Transit Co., 189 Mo. 362; Blundell v. Mfg. Co., 189 Mo. 559; Cole v. Transit Co., 183 Mo. 94, 81 S. W. 1138; Hester v. Packing Co., 95 Mo. App. 16, 75 S. W. 695; Thompson v. Railway, 86 Mo. App. 141; Smith v. Fordyce, 88 S. W. 686. (7) Mere knowledge that there is danger in working with an appliance furnished by the master will not defeat the action of the employee unless the danger is so glaring and patent as to threaten immediate injury or unless it be not reasonable to suppose that he could use the same safely by the exercise of ordinary care. Devore v. Railway, 86 Mo. App. 429; Hamilton v. Mng. Co., 108 Mo. 375, 18 S. W. 977. (8) The master is liable even though the injury to the servant may have been the result of the combined negligence of master and a fellow servant. Carterville v. Cook, 129 Ill. 152; Ellington v. Railway, 60 Mo. App. 686; Watson on Pers. Injuries, 68. (9) The testimony of Doctor Amyx was properly excluded. James v. Kansas City, 85 Mo. App. 20; Norton v. Moberly, 18 Mo. App. 457; Smart v. Kansas City, 91 Mo. App. 586; Eddington v. Ins. Co., 67 N. Y. 194; State v. Kennedy, 177 Mo. 129, 75 S. W. 979; Penn. Co. v. Marion, 123 Ind. 415; Raymond v. Railroad, 65 Ia. 152; Cahen v. Conn. L. I. Co., 41 N. Y. Super. Ct. 296; Post v. State ex rel. Hill, 14 Ind. App. 452; 23 Am. and Eng. Ency. of Law, 88. (10) Whether the elevator and shaft were so construc-

ted as to be reasonably safe for persons riding upon the elevator was a question upon which an expert elevator constructor might properly give his opinion. Benjamin v. Railway, 50 Mo. App. 602; Goins v. Railway, 47 Mo. App. 181; Hayes v. Sou.' Pac. Co., 17 Utah 99; Railroad v. O'Brien, 16 Col. 219; McConigle v. Kane, 20 Col. 292; Cross v. Railway, 69 Mich. 363; Taylor v. Town of Monroe, 43 Conn. 36; Lau v. Fletcher, 104 Mich. 295; Skinner v. Glass Co., 77 S. W. 1011; 5 Ency. of Evidence, p. 569.

STATEMENT.—The appellant is a corporation engaged in the manufacture of chairs, in the city of St. Louis. On June 23, 1902, the respondent, then fourteen years and eleven months old, was in the employ of the appellant, and at work on its freight elevator. As the elevator ascended from the first floor, the respondent's foot was caught, at the third or fourth floor, between the elevator and a projecting strip of timber nailed on the floor-beam and so badly crushed as to necessitate the amputation of his leg about ten inches below the knee. The suit is to recover for the injury. The negligence alleged, and relied upon at the trial for recovery, is as follows:

"That said elevator upon two sides thereof was not provided with gates or guards to prevent persons riding thereon from coming in contact with obstructions in the shaft; that between the sides so left open and the walls of the shaft was a space of several inches; that from each floor there extended a strip or sill of wood several inches in width and reaching to the sides of said elevator so exposed; that the failure to enclose said elevator on said sides and the extension of said strip into said elevator shaft made it extremely dangerous and hazardous to ride upon said elevator, in that persons so riding thereon were apt to come in contact with said

sill; that defendant carelessly and improperly exposed plaintiff to the dangers of said elevator and negligently omitted to give plaintiff notice of such dangers or instructions to protect himself from injury."

The answer was a general denial and the following plea of contributory negligence:

"Further answering, the defendant states that whatever injuries, if any, were sustained by plaintiff on the occasion mentioned in his petition by and on account of the matters and things in said petition set forth, were caused by the negligence of plaintiff directly contributing thereto in this, to-wit:

"That on the said occasion said plaintiff, while ascending in an elevator, carelessly and negligently stood near the edge of the said elevator platform, and as said elevator ascended said plaintiff carelessly and negligently allowed a portion of his foot to project over the edge of said elevator platform in such a manner as to allow it to be struck by a portion of the siding or enclosure of said elevator. And defendant states that the said acts of negligence on the part of said plaintiff directly contributed to cause whatever injuries, if any, were sustained by him on said occasion."

A reply was filed denying the new matter stated in the answer.

The elevator was simply a board platform constructed of rough boards with no cage or shield, and four uprights connected at the top and running in groves. The north side of the shaft in which the elevator ran was inclosed by a solid brick wall, the south side by a solid wooden wall. The east and west sides were not enclosed, except by doors on each floor which opened and closed automatically as the elevator ran up or down. There were five floors in the building, each story being about seven and one-half feet high. The distance between the elevator platform and the several floors abutting the elevator shaft was about three inches. To lessen these

openings for the purpose of preventing the legs of chairs catching between the elevator and the floors when dragged from one to the other, a strip of timber one and one-half inches square was nailed on the floor-beams on a level with the floor. The floor-beams are twelve inches wide.

Respondent testified that he had been working in the factory for several months, at different jobs, but had not worked on the elevator until about twelve days before he was injured; that by direction of the boss, he and several of the boys about his own age, for twelve days prior to his injury, between the hours of five and six p. m., had worked on the elevator, removing chairs from the upper to the lower floors; that on the day of his injury two loads of chairs had been carried down and the elevator was going up to the fifth floor for the third load; that while he was leaning on the shoulder of one of the boys (Clyde Harder) facing east, Harder stepped back on his toes and he threw his foot back and his heel was caught between the elevator and the projecting strip at the third floor and crushed. He further testified that he knew the strips were on the sills, knew that if he got his foot caught between one of them and the elevator he would be hurt; that it was dark on the first floor but not so dark on the second and third floors as to prevent one from seeing his surroundings. He also stated that he had not been warned by the foreman or any one else to lookout and be careful not to let his foot get caught between the elevator.

Respondent introduced testimony of an expert, tending to show that the construction adopted by appellant was not the usual construction of elevator shafts, but that the usual construction was either to have the twelve-inch beam extended out farther so as to be within one and one-half inches of the passing elevator, or else to fasten a sill at each floor, and have the said sill, instead of extending down one inch, extend down the entire

width of the beam.   Said expert expressed 'the opinion
that  either of said constructions would obviate the dan-
gers incident to a construction like that adopted by ap-
pellant.

The testimony in behalf of appellant tended to show
that the shaft construction adopted by it was the usual
construction, omitting the strips on the floor-beams. This
was shown by an ex-inspector of elevators of the city of
St. Louis, one of whose duties was to examine this
freight elevator for a period of eight years, during which
time he examined it four times a year, and every time
issued a certificate of indorsement; also by an employee
of the Moon Elevator Company who had been in the busi-
ness for seventeen or eighteen years.

As to the happening of the accident, the testimony
on behalf of appellant tended to show that the respond-
ent and been several times warned to be careful while
using the elevator and not to indulge in play.   The testi-
mony on behalf of appellant also tended to show that at
the time the respondent was injured he was "skylarking"
and while so doing allowed his foot to project beyond the
floor of the elevator.   Appellant offered to show by Dr.
Amyx that the respondent stated to him the day of the
accident that he was kicking back against the wall of
the enclosure of the elevator and that this was what
caused his accident.   This was objected to by the re-
spondent on the ground that the communication was
privileged.   The objection was sustained and appellant
saved exception.   The testimony for appellant also tend-
ed to show that the construction suggested by respond-
ent's expert, to-wit, to have the twelve-inch beam extend
out farther, or the sill extend down the entire length of
the beam, would not, in any way, be less dangerous than
the construction adopted by appellant, or in any way
obviate any of the dangers incident to the construction
adopted by appellant.

The trial resulted in a verdict for three thousand dollars in favor of the respondent and against the appellant. The latter filed its motion for a new trial in due time which was overruled and it appealed.

BLAND, P. J. (after stating the facts).—1. At the close of respondent's evidence the appellant moved for a peremptory nonsuit which the court refused. This ruling is assigned as error. If the respondent's evidence shows that the elevator furnished him was a reasonably safe place to work, or if the evidence is all one way that respondent himself was guilty of negligence that directly contributed to his injury, he should have been nonsuited.

Webb on Elevators, section 17, says: "Proper care in the construction of freight elevators does not require that they be wholly inclosed or sheathed, and this may be considered a general rule, although there may be exceptions," citing Hoehmann v. Moss Engraving Co., 4 Misc. Rep. 160. The same authority, at section 14, says: "In all cases except where the failure to exercise care is in violation of some statute, or willful, or such reckless disregard for the personal safety of others as to amount to negligence *per se,* the questions of fact arising in the case and the estimate of prudence are for the jury to determine."

Respondent offered some evidence tending to show that the accident was due to faulty construction, viz., that the strips nailed on the floor-beams were not properly constructed; that they should have been the full width of the beams and beveled from the upper to the lower edge to prevent the very sort of accident that happened to respondent. On this evidence, we think the issue, in respect to negligent construction, was a question for the jury to determine. [McGonigle v. Kane, 20 Colo. 292; Goodsell v. Taylor, 41 Minn. 207 (both elevator cases); Hunt v. Railroad, 14 Mo. App. 160; Young v. Webb City, 150 Mo. 333, 51 S. W. 709; State v. Peebles and York, 178 Mo. 475, 77 S. W. 518.]

Does respondent's evidence conclusively convict him of contributory negligence? We do not think so. He was standing near the edge of the elevator but not in a position to be caught between it and the strip on the floor-beam. He was a boy, who would not be expected to be on his guard at all times to avoid danger, was leaning on the shoulder of another boy, who, he says, stepped back on his foot, and to relieve his foot of the pressure, respondent stepped back and his heel was caught in the manner he described. A man, in respondent's situation, would perhaps have noticed that the elevator was near a floor and have remembered the danger of having his foot caught should he throw it back, but whether a fourteen-year-old boy should so closely observe and exercise such a degree of prudence, we think was a question for the jury; for the same standard of care required of an adult, in Rogers v. Meyerson Printing Co., 103 Mo. App. 683, 78 S. W. 79; was held not to apply to a boy of thirteen years, and not to apply to a boy of sixteen years in Campbell v. St. Louis & Suburban Ry. Co., 175 Mo. 161, 75 S. W. 86. It is the duty of employers of boys and girls of immature years not to expose them to such dangers as they are not likely to see or, if seen, appreciate, on account of their indiscretion and want of care; and if they do and injury results to the minor, the employers cannot escape liability on the plea of contributory negligence, unless they can show that the minor failed, after being warned of the danger, to use that care which persons of his age, capacity and intelligence are capable of and are expected to use in like circumstances. [Anderson v. Railroad, 81 Mo. App. 116; Coleman v. Land & Lumber Co., 105 Mo. App. 254, 79 S. W. 981; Anderson v. Railway, 161 Mo. 411, 61 S. W. 874.] And whether or not the minor did use such care is almost always a question for the jury. This case does not furnish an exception to this rule, and we think the court was right in refusing to nonsuit the respondent.

2. The appellant assigns as error the giving of the following instructions for the respondent:

"1. The court instructs the jury that if they find from the evidence that the defendant occupied a building in the city of St. Louis in which it carried on business as a manufacturer, and that in said building there was an elevator propelled by steam and maintained and operated by the defendant; that on the twenty-third day of June, 1902, plaintiff was in the employ of defendant, and was on said day riding upon said elevator in the discharge of his duties as such employee of defendant; that said plaintiff while so riding upon said elevator was injured by catching his left foot and ankle between the floor of said elevator and a certain sill or board which projected into the shaft of said elevator, up and down which said elevator was propelled; and if the jury further believe from the evidence that the extension of said sill or board into elevator shaft made the same unsafe or dangerous, and that such dangerous condition was known to defendant at said time, or could, by the exercise of ordinary care have been known to it, and if the jury believe from the evidence that the defendant did not exercise ordinary care in maintaining said elevator in such condition, and if the jury further believe from the evidence that plaintiff was injured in consequence of said dangerous condition of said elevator and that, at the time of the injury, plaintiff was exercising such degree of care as an ordinarily prudent boy of the same age and experience would have exercised under the same or similar circumstances, then the jury will find for plaintiff.

"2. The court instructs the jury in this case that if they find from the evidence that the plaintiff was a minor of about the age of fifteen years, then he could not and did not assume any risk that might arise in his employment, if any there was, caused by the failure of the defendant to exercise ordinary care to provide

a reasonably safe elevator shaft and appliances with which the plaintiff was to work in the discharge of the duties of his employment.

"5.   If the jury find from the evidence that there existed in the elevator shaft at the third or fourth floor of the building mentioned in the evidence a certain projection into said shaft, and if the jury find from the evidence that said projection rendered the use and travel on said elevator hazardous, and if the jury find from the evidence that defendant provided said elevator and shaft for the plaintiff to ride upon in the discharge of the duties of his employment; and if the jury find from the evidence that the defendant did not exercise ordinary care in providing said elevator and shaft for the plaintiff to work with in the discharge of the duties of his employment; and ·if the jury find from the evidence that on the twenty-third day of June, 1902, the plaintiff in the discharge of the duties of his employment was on said elevator and whilst so on said elevator the plaintiff was pushed or shoved by one Harder and thereby was caused to step back, and in doing so got his foot caught between said projection and the floor of the elevator, and thereby sustained the injuries mentioned in the evidence; and if the jury further find from the evidence that said condition or projection in said shaft directly concurred with said Harder in causing plaintiff's said injury; and if the jury find from the evidence that the plaintiff was exercising ordinary care at the time of his injuries, then he is entitled to recover."

The objection to the respondent's first instruction is disposed of by what is said in the foregoing paragraph of this opinion; likewise the objection to the second instruction, except the contention of appellant, that the respondent assumed whatever risk there was in riding on the elevator.   This is the principal contention of appellant and is chiefly relied upon for a reversal of the judgment.   It is contended that the evidence conclu-

sively shows the case is one of assumed risk, and able counsel have industriously and ably collated and digested the cases in this country upon the subject. Their labor is lost in the circumstances of the case and in view of the unique doctrine established by our Supreme Court, that the servant assumes only such risks as are ordinarily incident to his employment, after the master has performed his whole duty to provide him a reasonably safe place to work and reasonably safe appliances with which to do his work; and holding, that if the master is negligent in furnishing his servant an unsafe place to work, or unsafe appliances with which to do the work, and the servant knows, or by the exercise of ordinary care could have known of the unsafe place or appliances, and yet continues in the master's service, he does not thereby assume the risk occasioned by the negligence of the master; but if the place to work, or the appliance furnished, is obviously so dangerous that a reasonably prudent man would not attempt to use them, or they could not be used even with caution, the servant will be guilty of such contributory negligence as to cut off his right of recovery. [Wendler v. People's House Furnishing Co., 165 Mo. 527, 65 S. W. 737; Curtis v. McNair, 173 Mo. 270, 73 S. W. 167; Cole v. St. Louis Transit Co., 183 Mo. 81, 81 S. W. 1138; Blundell v. Mfg. Co., 189 Mo. 552, 88 S. W. 103.] See, also, Stafford v. Adams, 113 Mo. App. 723-4, 88 S. W. 1130, where JOHNSON, J., of the Kansas City Court of Appeals, has industriously collated the other Missouri cases in point.

In Blundell v. Mfg. Co., supra, at page 560, Judge MARSHALL, in respect to the doctrine of assumption of risk and contributory negligence, says: "There is a vast difference between the doctrines of assumption of risk and contributory negligence; the first rests in contract, and the second arises out of the negligence of the servant. The result to the person injured is the same in both cases, but the underlying principles are radically

different, and should be carefully borne in mind in every case. The maxim, *'volenti non fit injuria,'* cuts off a recovery where the injury is caused by one of the risks incident to the business which the servant assumes when he enters the employment. The right of recovery is cut off in the second case under the rule of law that prohibits a recovery where the negligence of the person injured contributes thereto.''

Under the law of the Supreme Court of the State, the respondent did not assume the risk arising from the negligent construction of the elevator, if it was negligently constructed, and hence instruction No. 2 is not erroneous.

3. It is contended that respondent's fifth instruction is erroneous for the reason that Harder stepping on the respondent's foot was the primary and proximate cause of the injury.

In Bassett v. City of St. Joseph, 53 Mo. 290, an excavation extending into the street was negligently left uncovered, and plaintiff (a female traveling on the street) through fear of being kicked by a mule, jumped to one side and into the excavation and was injured. It was held that the kicking of the mule, or the fright caused thereby, was not the sole cause of the injury and that plaintiff was entitled to recover, if she was in the exercise of ordinary care.

In Carterville v. Cook, 129 Ill. 152, plaintiff, a boy, while exercising ordinary care for his own safety, passing along a much-used public sidewalk of defendant, was, by reason of the inadvertent or negligent shoving by one boy of another boy against him, jostled or pushed from the sidewalk at a point where it was elevated some six feet above the ground, and where it was unprotected by railing or other guard, and thereby severely injured in one of his limbs. It was ruled: "If a person, while exercising due care for his personal safety, be injured by the combined result of an accident and the inadvert-

ent or careless act of another, or the negligence of a city or village, and the injury would not have been sustained but for such negligence of the city or village, yet, although the accident or wrongful act of the third person be the primary cause of the injury, if it was such as common prudence could not have foreseen and avoided, the negligent city or village will be liable for the injury."

In Newcomb v. Railroad, 169 Mo. 409, 69 S. W. 348, it was held: "A defendant is liable if his negligence concurred with that of another, . . . . and became a part of the direct and proximate cause although not the sole cause of the injury."

The instruction is in line with these authorities and we think properly stated the law.

4. Error is assigned in the refusal of the court to give the following instructions asked by appellant:

"B. The court instructs the jury that there is no evidence of any negligence in this case on the part of the defendant with reference to the construction of the elevator in question.

"C. The court instructs the jury that plaintiff in his petition alleged that the defendant was guilty of negligence in having a sill on the interior of the elevator shaft at the third floor of the building in question. And the court instructs the jury, with reference to the sill mentioned in the petition, that there is no evidence of any negligence on the part of the defendant in having such a sill on the third floor.

"D. The court instructs the jury that if you believe from the evidence the plaintiff knew the way the elevator shaft in question was constructed, and knew that there was a projection of one and one-half inches into the elevator shaft at each floor, and knew this space at this projection was narrower than it was between the floors, and if you also believe from the evidence that the plaintiff knew there was no guard on the platform of the elevator, and also knew that if his foot was out beyond the plat-

form of the elevator it would be caught by such projection, and that he understood and comprehended there was danger of this happening while and during all the time he was using the elevator, and you also believe from the evidence that having this knowledge and understanding (if you from the evidence believe he did have them) he of his own will continued in the employ of the defendant and continued to use the elevator in question, then he assumed the risk of being caught and injured by such projection."

If we are right in our views of the case as stated in the foregoing paragraphs, the court properly refused these instructions.

5. Error is assigned in the refusal of the court to permit Dr. Amyx to testify to a conversation had with the respondent in regard to his injury and how he happened to be injured. The doctor's evidence shows that when respondent was injured, appellant sent him to the doctor's office for treatment and the interview was had while respondent was in his care. In answer to the following question: "The subject of your interview and conversation with him was to ascertain his condition for the purpose of treating him," the doctor said: "Yes, sir. And there were other motives there." He further testified that he was acting as physician and surgeon for the appellant, and that the remarks made by the respondent were not made in answer to any question asked in order to properly treat him.

Section 4659, R. S. 1899, provides: "The following persons shall be incompetent to testify: . . . fifth, a physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." The fact that Dr. Amyx examined respondent at the instance and request of appellant for the purpose of treating him

did not remove his incompetency.  [Weitz v. Railway, 53 Mo. App. 39.]  The doctor's testimony shows that he had a double purpose in holding the interview with respondent: first, to ascertain his condition for the purpose of treating him professionally; second, to apply the boy with questions, while he was suffering from shock and severe pain as a result of the recent injury, for the purpose of getting some statement or admission from him that would be advantageous to his (Amyx's) employer, the appellant, in case the boy should sue to recover compensation for his injury.  In these circumstances we are not inclined to split the interview into parts and determine what parts were and were not necessary to enable the doctor to prescribe for the respondent, but to hold him incompetent to testify to any part of the interview; besides, the evidence of the doctor, as offered, was but cumulative and there is no probability that it would have changed the result if it had been admitted.

6.  George W. Caldwell, an expert witness for respondent was permitted to testify, over the objection of the appellant, that the strips nailed on the floor-beams were unnecessary; that "they formed a cage that would catch anything that might get in their way;" that he never erected an elevator or allowed anything like said strips, and it was not the ordinary method of finishing the well-hole of an elevator, and if put on should extend to the bottom of the floor-beams.  It is contended that this was not a proper subject of expert testimony; that the only proper expert testimony in this connection was to show whether this was the usual construction, and that the question as to whether or not it was necessary was entirely immaterial.

In Lee v. Knapp & Co., 55 Mo. App. l. c. 406, in speaking of the construction of an elevator, this court said: "Mere usage by others is not the sole criterion. It is the duty of owners of elevators to make them reason-

ably safe for the uses to which they are to be put; and, in so doing, they should exercise that degree of care employed by reasonably prudent men in attaining the same end."

The witness testified that elevators were not usually constructed as was this one, that strips were not common on elevators in the city of St. Louis. We can see no valid objection to the testimony.

Discovering no reversible error in the record, the judgment is affirmed. *Goode, J.,* concurs; *Nortoni, J.,* dissents.

NORTONI, J. (dissenting).—The defense of assumed risk is not pleaded in the answer in this case and except for the fact that both parties requested instructions along that theory and tried the case with respect thereto, it would not be a subject for our consideration; but as the record discloses both parties participated in the trial as though this defense was pleaded in the answer, it therefore becomes the province of the court to review the question here. I do not concur in that portion of the opinion of the court holding that under the law of this State, the servant assumes only such risks as are ordinarily incident to the employment. In the recent case of Mathis v. Kansas City Stock Yards Co., 185 Mo. 434, decided by the Supreme Court in banc, the servant was held to have assumed the risk which clearly arose by virtue of the master's negligence and was not one ordinarily incident to the employment. The holding was predicated upon the proposition that by continuing in the employment without complaint with respect to the dangerous appliance, the servant had assumed the risk resulting therefrom, provided he knew and appreciated the risk thereof, and he was held as a matter of law to have known and appreciated the danger inasmuch as the danger was obvious. Now it is the law universally that by continuing to labor with a defective appliance without complaint, the servant assumes such

risks therefrom as were both known and appreciated by him, and further, that when the dangers of such defective appliance is obvious to both servant and master alike, he is held to have assumed the risk therefrom as a matter of law. Our views on this question are fully set out in Lee v. St. L. M. & S. E. Ry. Co., 112 Mo. App. 372, 87 S. W. 12, and Rigsby v. Oil Well Supply Co., 115 Mo. App. 297, 91 S. W. 460. Our Supreme Court, in numerous ably considered cases, has recognized and adjudged the proposition stated to be the law. There is no question about that. The cases are abundant to that effect. None of them have been expressly overruled. Consult the following authorities in point: Porter v. Ry. Co., 71 Mo. 66; Keegan v. Kavanaugh, 62 Mo. 230; Fugler v. Bothe, 117 Mo. 475, 22 S. W. 1113; Steinhauser v. Spraul, 127 Mo. 541, 28 S. W. 620, 30 S. W. 102; Mathis v. Kansas City Stock Yards Co., 185 Mo. 434, 84 S. W. 66. These cases are sound in principle and in accord with the best courts on this subject in every jurisdiction where the common law obtains, so far as I have been able to ascertain, and I have devoted much time and careful thought to the question of assumed risk. I do not say that the boy in this case should have been held, as a matter of law, to have assumed the risk, but I am of the opinion that at least the plaintiff's second instruction incorporates a vicious notion with respect to this question and that it should have been refused.

I am of opinion that the defendant's instruction D. as follows: "The courts instructs the jury that if you believe from the evidence that plaintiff knew the way the elevator shaft in question was constructed, and knew that there was a projection of one and one-half inches into the elevator shaft at each floor, and knew this space at this projection was narrower than it was between the floors, and if you also believe from the evidence that the plaintiff knew there was no guard on the platform of the elevator, and also knew that if his foot was out be-

yond the platform of the elevator it would be caught by such projection, and that he understood and comprehended there was danger of this happening while and during all the time he was using the elevator, and you also believe from the evidence that having this knowledge and understanding (if you from the evidence believe he did have them) he of his own will continued in the employ of the defendant and continued to use the elevator in question, then he assumed the risk of being caught and injured by such projection," was a proper declaration of law on the facts in proof and that it should have been given. To my mind, it appears that its refusal was error.

I deem the doctrine of assumed risk running through the case as manifested by the instructions given and refused, to be at variance with fundamental principle on the subject as well as in conflict with the several decisions of our Supreme Court above cited, and therefore respectfully request that the cause be certified to that Court.